### NORTHWESTERN MUT. LIFE INS. CO. v. QUINN et al.

(Circuit Court, W. D. Michigan, S. D. July 23, 1895.)

1. CLERKS OF COURT—FEES AND COMMISSIONS.

The clerk is not entitled to any commission on the amount of the accepted bid in a foreclosure sale where the sale is conducted by a special master, who, under direction of the decree, himself pays over the proceeds to the mortgagee, so that no money comes into the clerk's hands.

2. SAME.

The decree was not void if erroneous, and, after execution, an objection by the clerk was too late.

This was a bill for the foreclosure of a mortgage brought by the Northwestern Mutual Life Insurance Company against Thomas B. Quinn, Mary Quinn, Herman N. Williams, Elizabeth Williams, and John Dennery. Heard on the petition of Charles L. Fitch, clerk of the court, for an allowance of the statutory percentage on the amount bid at the foreclosure sale.

[1] Rehearing pending.

More & Wilson, for complainant.
Charles L. Fitch, in pro. per.

LURTON, Circuit Judge. On the 24th of May, 1894, a decree for the foreclosure of a mortgage was made by the circuit court, and John S. Lawrence was appointed a special master for the purpose of executing the decree. This decree was for the purpose of satisfying the amount due to the complainant, as fixed by the decree, of $2,520.75, and the costs. The said master in chancery by the decree was ordered, out of the proceeds of sale, to "retain his fees, disbursements, and commissions on said sale, and pay to complainant, or its solicitors, its costs in this suit to be taxed, and also the amount so reported, due as aforesaid, together with legal interest thereon, as aforesaid, from the date of said report, or so much thereof as the purchase money of the mortgaged premises will pay of the same; and that the said master take receipts for the amount so paid, and file same with his report; and that he bring the surplus moneys arising from said sale, if any there be, into court without delay, to abide the further order of this court." In pursuance of this decree, the master sold the mortgaged premises February 13, 1895, for $2,837.41, the complainant being the purchaser. No money except for the fees, disbursements, and commissions of the master was actually paid him, he taking the complainant's receipt for the purchase price, as having been paid on complainant's debt, and for the taxed costs of the cause. The master filed his report of sale and the receipts of the complainant, and showed that there was no surplus to be returned into court. Thereupon Charles L. Fitch, clerk of said court, filed his petition, setting out the facts as above, wherein he insisted that, notwithstanding the decree, the master should have required the complainant to pay the amount of its bid in money, and that this purchase money should have been paid into the registry of the court, under sections 995, 996, of the Revised Statutes of the United States, and that in such case petitioner would be entitled to 1 per cent. of said moneys for receiving, keeping, and paying out the same, as provided by section 828 of the Revised Statutes. The prayer of the petition is that the complainant may be ordered to pay the amount of its bid "over to said master in chancery, or into the registry of this court, to be disposed of as required by law, unless it shall voluntarily pay over to your petitioner one per cent. thereof, as and for the clerk's statutory percentage thereon." Section 828, Rev. St., among other things, provides that the clerk shall receive, "for receiving, keeping and paying out money, in pursuance of any statute or order of court, one per centum on the amount so received, kept and paid out." It is manifest that this was intended to compensate the clerk for the service and responsibility of "receiving, keeping, and paying out money" under any statute or order of the court. Mr. Fitch has never actually received, kept, or paid out any part of the money on which he now claims a commission. The clerk is not entitled to this statutory commission unless the money has either actually or constructively passed through his hands. In re Goodrich, 4 Dill.

230, Fed. Cas. No. 5,541; Leech v. Kay, 4 Fed. 72; Blake v. Hawkins, 19 Fed. 204; Fagan v. Cullen, 28 Fed. 843; The Serapis, 37 Fed. 437; Smith v. The Morgan City, 39 Fed. 572; Easton v. Railway Co., 44 Fed. 719.

The contention of the clerk that this purchase money was ever constructively in his hands is equally unfounded. No money ever in fact came into the hands of the master who made the sale. Having been directed by the decree of the court to pay to the complainant the costs taxed in the cause, and the amount of its mortgage debt, with interest, the master was entirely justified in taking the complainant's receipt, it being the purchaser. But if money had been paid to the master, and he had paid it out as directed by the decree, how could it be said that this money had ever been constructively in the hands of the clerk? Certainly, the clerk was never responsible for any part of it, and his bond had never protected it. The master, in receiving and paying out this fund, was acting by direction of the decree appointing him. The theory that he should have ignored the decree, and paid the proceeds into court, is based upon the suggestion that the decree, in so far as it directed him to pay out the purchase money to the extent of the costs and debt, was void, as contravening section 995, Rev. St. That section reads as follows:

"All moneys paid into any court of the United States, or received by the officers thereof, in any cause pending or adjudicated in such court, shall be forthwith deposited with the treasurer, an assistant treasurer, or a designated depositary of the United States, in the name and to the credit of such court; provided, that nothing herein shall be construed to prevent the delivery of any such money upon security, according to agreement of parties, under the direction of the court."

That the master was an officer of the court is plain. U. S. v. Hartwell, 6 Wall. 385; Thomas v. Railway Co., 37 Fed. 548.

In the absence of a direction to make some other disposition of the proceeds, a special master should comply with the statute, and pay the proceeds of sale to the designated depositary of the United States, to the credit of the court. To have done so in this instance would have been to disregard the decree, which explicitly ordered him to make the very disposition of the proceeds which he did make. The question as to whether the decree was inadvertently made was not for the master to quibble about. The proviso to the section cited seems to leave it within the power of the parties, under direction of the court, to have the fund disbursed by the master to those entitled, as a delivery on security satisfactory to those interested. No reason appears for construing this section of the statute as depriving the court of authority to make such special order as is deemed wise and prudent with regard to the special case, leaving the statute to cover cases where no disposition of the fund is made by decree. The authorities upon this question are not harmonious, and there is no reason for now deciding the question. Easton v. Railway Co., 44 Fed. 719; Thomas v. Railway Co., 37 Fed. 548. The decree under which the sale was made and the proceeds disbursed was not void. It was, at most, erroneous in respect to the disburse-

ment by the master. There was no application for its modification, as in Thomas v. Railway Co., heretofore cited. If I treat the present proceeding as an application for its modification, it comes too late, for the decree has been fully executed. If the clerk conceives his legal commission affected by an inadvertent order, he should at the time raise the question by an application for a modification. He cannot stand by and let the decree be executed, and then ask commissions upon the theory that the decree which kept him from receiving, keeping, and paying out the fund was void, or that it constructively placed the fund in his hands. The application must be disallowed.