William R. VAN GEMERT, et al., Plaintiffs-Appellants,

v.

The BOEING COMPANY, Defendant-Appellee.

Nos. 866, 1077 and 1078, Dockets 83–7843, 83–7851 and 83–7853.

United States Court of Appeals, Second Circuit.

Argued April 9, 1984.

Decided June 29, 1984.

Norman Winer, Joseph Sternberg, New York City (Kass, Goodkind, Wechsler & Labaton, New York City on the brief), for plaintiffs-appellants.

Henry L. King, New York City (Carolyn Curtis, and Davis, Polk & Wardwell, New York City on the brief), for defendant-appellee.

Allan E. Kirstein, Asst. Atty. Gen. of the State of New York, New York City (Robert Abrams; Atty. Gen., Daniel L. Kurtz, Asst. Atty. Gen. In Charge Charities, Trusts and Estates Bureau, and Jonathan J. Silbermann, Asst. Atty. Gen., New York City, on the brief), for State of New York, proposed intervenor-appellant, amicus curiae.

Before TIMBERS and PRATT, Circuit Judges, and METZNER, Senior District Judge, Southern District of New York, sitting by designation.

TIMBERS, Circuit Judge:

Appellants class members and proposed intervenor, the State of New York, appeal from an order entered September 12, 1983 in the Southern District of New York, Irving Ben Cooper, *District Judge*, distributing to defendant, The Boeing Company, the unclaimed portion of a class action judgment fund, subject to the conditions that Boeing publish notice of the availability of the fund in its annual report and that Boeing stand ready to pay valid claims against the fund in perpetuity.

For the reasons stated below, we affirm.

## I.

This is the latest, and probably not the last, of numerous appeals during the course of the eighteen years of this extensive litigation. We assume familiarity with the prior opinions and decisions referred to below—of the Supreme Court, of our Court, and of the District Court. We shall briefly summarize only those facts and prior proceedings believed necessary to an understanding of our ruling on the narrow question presented on the instant appeal.

In March 1966, Boeing called for redemption of certain convertible debentures. Boeing announced the call by mailing notices to those investors who had registered their debentures. Pursuant to the terms of the Indenture Agreement, Boeing publish-

ed in two national newspapers notices of its intention to call. In the notices, March 29, 1966 was set as the deadline for the debenture holders to exercise their conversion rights. After this deadline, holders of debentures with a face value of $1,544,300 (7.2% of the total) had not converted and were left only with the less attractive right to redeem. The debenture holders thus were faced with two choices: either deliver the debentures for conversion by March 29 and receive two shares of Boeing common stock worth a total $316.25 for each $100 principal amount or deliver the debentures for redemption at any time and receive $103.25 for each $100 principal amount. Rational investors, aware of this choice, presumably would have opted for conversion and the $216.25 conversion premium rather than redemption and the corresponding $3.25 call premium. Under the judgment of the district court filed July 6, 1977, there are two categories of class members: first, those who have neither converted nor redeemed their debentures, and, second, those who redeemed.

Van Gemert and several other nonconverting debenture holders commenced a class action in the district court, contending that Boeing had violated the federal securities laws as well as state law, by failing to give the class members adequate and reasonable notice of its decision to redeem. The court dismissed the complaint, holding that Boeing had given the notice required by the Indenture Agreement. On appeal, we held that under state law Boeing had an implied duty to provide reasonable notice of its intention to redeem the debentures; that that duty had not been satisfied by the notice actually given; and accordingly that Boeing was liable despite its compliance with the notice provisions of the Indenture Agreement. We remanded the case for determination of damages. *Van Gemert v. Boeing Co.*, 520 F.2d 1373 (2 Cir.) (*Van Gemert I*), *cert. denied*, 423 U.S. 947 (1975).

On remand pursuant to *Van Gemert I*, the court calculated damages based on the difference between the redemption price and the market value of the shares of common stock that would · have resulted from conversion on March 29, 1966. The total dollar amount was $3,289,359. The court, however, declined to award prejudgment interest. On appeal, we affirmed the damage calculation, but held that plaintiffs were entitled to prejudgment interest. *Van Gemert v. Boeing Co.*, 553 F.2d 812 (2 Cir.1977) (*Van Gemert II*). We also held that the plaintiff class members should not share in the unclaimed portion of the judgment fund, since that would constitute a form of fluid class recovery in contravention of *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 (2 Cir.1973), *vacated and remanded on other grounds*, 417 U.S. 156 (1974). Since Boeing could have a right to the unclaimed money, we rejected the proposal that the claiming class members use the unclaimed portion to defray their legal expenses, for such a proposal might shift fees to the losing party in violation of the American rule.

On remand pursuant to *Van Gemert II*, the court entered judgment on July 6, 1977, assessing damages, as it had before, in amount of $3,289,359, but this time adding prejudgment interest from March 29, 1966, the date of the breach. The court ordered Boeing to deposit in a bank account the total amount plus accrued postjudgment interest. The court further ordered that each individual debenture holder who recovered should bear his proportionate share of the fees, expenses, and disbursements. The court appointed a Special Master to administer the judgment and to pass on the validity of individual claims.

Boeing appealed from the judgment of July 6, 1977, claiming that under *Van Gemert II* the attorneys for the class members should be paid only from the claimed portion of the judgment fund. A panel of our Court agreed in substance. We reversed and remanded, holding that class members could not be treated collectively; since non-claiming class members had not received any benefit from the attorneys' services, they should not be required to pay. *Van Gemert v. Boeing Co.*, 573 F.2d 733 (2 Cir.) (*Van Gemert III*), *rev'd en*

*banc,* 590 F.2d 433 (2 Cir.1978) (*Van Gemert IV*). In our *en banc* opinion, we affirmed the judgment of the district court, holding that non-claiming class members had received a benefit within the meaning of the common fund doctrine. *Van Gemert v. Boeing Co.,* 590 F.2d 433 (2 Cir. 1978) (*Van Gemert IV*). The Supreme Court affirmed *Van Gemert IV. Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980). For an illuminating discussion of the common fund doctrine in the context of the instant case, *see* Note, *Attorney's Fees, Unclaimed Funds, and Class Actions: Application of the Common Fund Doctrine,* 48 Fordham L.Rev. 370 (1979).

Since the entry of the district court's judgment of July 6, 1977 on remand from *Van Gemert II,* the Special Master has attempted to locate non-claiming class members entitled to payments from the fund. The amount of the fund has been decreased by the payment of fees to plaintiffs' attorneys, administrative expenses of managing the fund, and payments to class members who have filed valid claims. For example, in July 1981, $3,348,545.71 was paid to plaintiffs' attorneys; and, in June 1982, payments totalling $3,916,197.12, including interest, were made to the majority of claiming class members. On the other hand, the fund has been increased by interest resulting from investment of the fund.

On September 22, 1982, Boeing moved for an order releasing the unclaimed funds to Boeing. In an order dated October 7, 1982, the court relieved the first Special Master and appointed a second Special Master to recommend how to deal with the unclaimed funds. The states of New York and Illinois filed motions to intervene and stated their positions to the second Special Master. On July 20, 1983, the Special Master recommended that Boeing's motion be granted upon certain conditions, and that the motions of New York and Illinois to intervene be denied but with leave to file briefs as amicus curiae.

On September 12, 1983, the court confirmed the Special Master's report and recommendations. Specifically, the court denied the motions of New York and Illinois to intervene, but ordered that their briefs and papers be considered on an amicus curiae basis. The court further ordered that the undisbursed balance of the judgment fund be returned to Boeing, subject to the conditions that Boeing publish notice of the availability of the fund in its annual report for the next ten years and that Boeing pay in perpetuity any valid future claims by debenture holders who had not yet received payment.

The Special Master reported that, of the 7.2% of debentures outstanding after the March 29, 1966 conversion deadline, 59.4% had been paid. In a letter to this Court dated April 9, 1984, counsel for Boeing advised that the amount remaining in the judgment fund returned to Boeing was $2,710,272. From this fund, the remaining class members are entitled to $1,317,948 in damages, plus prejudgment interest at the statutory rate and legal interest from the date of judgment to the date of payment.

The question before us on the instant appeal is whether the district court's distribution plan for the unclaimed portion of the fund is proper. On previous appeals, we did not express any views as to how to disburse the unclaimed portion of the fund. *Van Gemert III, supra,* 573 F.2d at 737; *Van Gemert IV, supra,* 590 F.2d at 440 n. 17. Likewise, the Supreme Court declined to express any opinion on the matter. *Boeing Co. v. Van Gemert, supra,* 444 U.S. at 482 n. 8. For the reasons stated below, we hold that the district court's plan is proper.

II.

■ Although we hold that the plan of distribution adopted and approved by the district court is fair and equitable, we nevertheless shall discuss in the balance of this opinion the claims of the respective appellants.

We turn first to 28 U.S.C. §§ 2041 and 2042 (1982) to determine their legal applicability to the facts and procedural history of this case. Their applicability in an equitable context will be considered in Section III

of this opinion, *infra.* The statutory provisions referred to are as follows:

### 28 U.S.C. § 2041. Deposit of moneys in pending or adjudicated cases

"All moneys paid into any court of the United States, or received by the officers thereof, in any case pending or adjudicated in such court, shall be forthwith deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court.

This section shall not prevent the delivery of any such money to the rightful owners upon security, according to agreement of parties, under the direction of the court."

### 28 U.S.C. § 2042. Withdrawal

"No money deposited under section 2041 of this title shall be withdrawn except by order of court.

In every case in which the right to withdraw money deposited in court under section 2041 has been adjudicated or is not in dispute and such money has remained so deposited for at least five years unclaimed by the person entitled thereto, such court shall cause such money to be deposited in the Treasury in the name and to the credit of the United States. Any claimant entitled to any such money may, on petition to the court and upon notice to the United States attorney and full proof of the right thereto, obtain an order directing payment to him."

Appellants represented by the Kass firm and the proposed intervenor-appellant, the State of New York, argue that, since the court ordered that the fund be paid into a commercial bank account under the supervision of the Special Master, the fund constituted "moneys paid into ... court". As such, they argue, §§ 2041 and 2042 require that the fund be deposited in the Treasury of the United States. In essence, appellants contend that, at the moment the court-ordered and Special Master-supervised fund was created, the unclaimed portion of the fund was destined to be deposited in the Treasury.

Appellants cite several cases which they say demonstrate the applicability of §§ 2041 and 2042 to the instant case. In most of these cases, however, the issue was whether a judgment debtor had sustained its burden of proving a claim to portions of funds already on deposit with the Treasury under § 2042. For example, in *Pennsylvania Railroad Co. v. United States*, 98 F.2d 893 (3 Cir.1938), the railroad, which had issued bonds, sought to recover the unclaimed portion of a judgment fund. Ten years earlier, however, the unclaimed portion of the fund had been transferred from the registry of the court to the Treasury pursuant to a predecessor to § 2042. *Id.* at 894. The holding—that the judgment debtor had failed to sustain its burden of proving its right to the fund—is of doubtful value in analyzing whether §§ 2041 and 2042 require *creation* of a Treasury fund in the instant case. Likewise, *In re Vulcan & Reiter Co.*, 80 F.Supp. 286 (S.D.N.Y.1948), and *Hansen v. United States*, 340 F.2d 142 (8 Cir.1965), are of no help in our analysis of this issue because in those cases funds already had been created.

In *Hodgson v. Wheaton Glass Co.*, 446 F.2d 527 (3 Cir.1971), the court observed that, while one provision of the Fair Labor Standards Act (29 U.S.C. § 216(c)) allowed a court to direct payment of unclaimed back wages to the Treasury, there was no corresponding provision in 29 U.S.C. § 217 —the section upon which the disputed district court judgment was based. The court concluded, however, that a court of equity in a § 217 case has *authority* to order that unclaimed funds be deposited in the Treasury under 28 U.S.C. §§ 2041 and 2042. *Id.* at 535. We believe *Wheaton Glass* to be inapposite because on the instant appeal no one questions the court's *authority* to use §§ 2041 and 2042 for unclaimed funds in an appropriate case. *See also Hodgson v. YB Quezada*, 498 F.2d 5, 6 (9 Cir.1974).

Appellants rely heavily on *Panhandle Eastern Pipe Line Co. v. Federal Power Commission*, 179 F.2d 896 (8 Cir.1949) (en banc). Such reliance strikes us as misplaced. In *Panhandle*, a judgment debtor

utility petitioned the Eighth Circuit for reimbursement of fund administration costs that it had ordered the utility to pay. The Federal Power Commission and several states argued that § 2042 compelled the deposit of all unclaimed money in the Treasury. The Eighth Circuit, however, reasserted its authority to reimburse the judgment debtor at a time prior to creation of the bank account for the overpayment fund and concluded that "nothing has since occurred to deprive the Court of jurisdiction to make any modification of the order which equitably ought to be made." *Id.* at 901. While the court used §§ 2041 and 2042 to dispose of the bulk of the fund, the partial reimbursement to the utility strikes us as analogous to payment to Boeing in the instant case because it was made on the condition that in the future the utility would have to restore to the fund any portion of the reimbursement that might become necessary to enable the court to pay valid claims. We believe that *Panhandle* supports Boeing's position. It reinforces our view that a court of equity may dispose of funds fairly—without being compelled to utilize §§ 2041 and 2042.

Finally, appellants have dug deep to come up with a 170 year old case where the court considered money deposited in a bank account pursuant to a judgment to be money deposited with the court. *Ex parte Prescott,* 19 Fed.Cas. 1283 (C.C.N.H. 1814) (No. 11,388). *Prescott* was one of many cases where the issue was whether a court clerk, who statutorily was entitled to a commission on "money deposited in court", was entitled to a commission on funds not directly paid into the registry of the court. True, *Prescott* does seem to interpret "money deposited in court" so broadly as to include any money deposited anywhere subject to the order of the court. Other cases, however, have interpreted the phrase more narrowly. For example, going back only 89 years, in *Northwestern Mutual Life Insurance Co. v. Quinn,* 69 F. 462 (C.C.W.D.Mich.1895), the court rejected a clerk's argument that he was entitled to a commission on funds which a special master received and then paid out

to plaintiffs under order of the court. The *Quinn* court, holding that the money never actually passed through the clerk's hands, rejected the clerk's claim that the decree of the ordering court was void because in contravention of the predecessor of § 2041. The court stated:

"In the absence of a direction to make some other disposition of the proceeds, a special master should comply with the statute, and pay the proceeds of sale to the designated depositary of the United States, to the credit of the court. To have done so in this instance would have been to disregard the decree, which explicitly ordered him to make the very disposition of the proceeds which he did make. The question as to whether the decree was inadvertently made was not for the master to quibble about. The proviso to the section cited seems to leave it within the power of the parties, under direction of the court, to have the fund disbursed by the master to those entitled, as a delivery on security satisfactory to those interested. No reason appears for construing this section of the statute as depriving the court of authority to make such special order as is deemed wise and prudent with regard to the special case, leaving the statute to cover cases where no disposition of the fund is made by decree."

*Id.* at 464. We agree with the reasoning of *Quinn.*

We hold that § 2041 does not limit the discretion of the district court to control the unclaimed portion of a class action judgment fund. Whether the money has been paid into court or whether an alternative method of administering payment is used, the money held is within the court's jurisdiction and subject to the court's order. Establishing a bank account to collect funds does not strip a court of authority to dispose of the unclaimed portion of the fund in a manner it deems wise and prudent. Sections 2041 and 2042 will control when a court so orders or when the court fails to make any disposition of this type of fund. The statutes referred to do not con-

trol when a court fashions a plan for distributing unclaimed funds. In short, we refuse to put the legal shackles of §§ 2041 and 2042 on the hands of a court which strives to do equity.

In view of our holding that § 2041 does not limit the court's authority in this case, we find it neither necessary nor appropriate to reach Boeing's argument that, even if § 2041 does apply, § 2042 does not apply because the disposition of the unclaimed funds is in dispute and open to adjudication.

### III.

Appellants and the proposed intervenor-appellant, anticipating our holding that §§ 2041 and 2042 do not require as a matter of law that the unclaimed judgment fund be deposited in the Treasury, argue alternatively that other schemes for distribution of the unclaimed fund would be more equitable than the plan ordered by the district court. We shall consider the other proposed schemes seriatim.

### (A)

The scheme advocated by appellants represented by Attorney Winer and those represented by the Kass firm is that there should be a pro rata distribution of the unclaimed portion of the fund among class members who have come forward. In *Van Gemert II*, based on our holding in *Eisen v. Carlisle & Jacquelin, supra,* we rejected this contention. *Van Gemert II, supra,* 553 F.2d at 815. We believe that the reasoning of *Van Gemert II* is sound. The Winer appellants argue that *Van Gemert II* was overruled by *Van Gemert IV.* They misread the case because in *Van Gemert IV* we approved the holding of *Van Gemert II. Van Gemert IV, supra,* 590 F.2d at 440. Furthermore, we have explicitly differentiated *Van Gemert II* from *Van Gemert III. E.g., Van Gemert IV, supra,* 590 F.2d at 436 n. 9.

The Winer appellants also argue that further distribution to claiming class members is appropriate to offset the costs of litigation and inflation. In *Van Gemert II,*

we rejected the proposal for reimbursement of attorneys' fees for claiming class members. *Van Gemert II, supra,* 553 F.2d at 816. We now reject appellants' argument that due to inflation the claiming class members are entitled to further distributions. The result they seek is essentially no different than the previously rejected pro rata distribution proposal. Both proposals would give unclaimed funds to claiming class members. Both proposals, moreover, would seriously jeopardize the superior equitable interests of the nonclaiming class members and both are contrary to our reasoning in *Eisen.*

### (B)

The State of New York argues that the court incorrectly applied equitable principles in returning a judgment fund to a defendant who had been adjudicated liable for improper conduct. While it does not . explicitly say so, the State apparently contends that the court should have applied §§ 2041–2042 in equity. Presumably New York and other claiming states eventually then could assert claims under state abandoned property laws.

The Special Master found that there were three distinct equitable choices for distribution of the unclaimed funds: return the funds to Boeing, apply the *cy pres* doctrine, or apply §§ 2041 and 2042. Application of the *cy pres* doctrine would have produced the same result as applying §§ 2041–2042 but in a more direct fashion. No appellant urges this alternative before us now. After observing that there was a dearth of authority dealing with equitable disposition of an unclaimed judgment fund, the Special Master examined several equitable factors he believed to be dispositive.

First, the Special Master considered the fact that the case is a *private* action. In reaffirming our holding as to Boeing's liability, we made it clear that Boeing had breached private contractual duties to the indenture holders. *Van Gemert II, supra,* 553 F.2d at 815. *Cf. SEC v. Golconda Mining Company,* 327 F.Supp. 257, 259–60

(S.D.N.Y.1971) (No return of unclaimed funds allowed to defendant in an action commenced by Securities and Exchange Commission in the *public* interest to enforce the federal securities laws. "This litigation is not a private affair involving those with whom the defendant had the transactions."). The Special Master concluded that, in a private action such as the instant one, a defendant should not be obligated to pay more than the amount claimed. The private nature of the action also was the reason he did not recommend that the unclaimed funds be turned over to the State of New York and others, which would be the result if §§ 2041–2042 were applied. The Special Master reasoned that in this private action the fact that certain private plaintiffs had failed to come forward to collect on their judgment should not entitle the states to a windfall.

Second, the Special Master considered the nature of the wrong committed. He recognized our holding with respect to the inadequacy of Boeing's notice to the debenture holders, but he pointed out that during each step of the process Boeing had acted without malice, without bad faith and relied on the advice of others before taking each step. For example, Boeing sought and received the advice of two outside law firms before concluding that it was bound by the terms of the Indenture and legally unable to convert debentures tendered after the expiration of the conversion privilege.

Appellants argue that, since Boeing's technical adherence to the notice requirements was found to be insufficient in *Van Gemert I,* to allow a return of the unclaimed fund would reward Boeing for its failure to deal with investors in good faith. They claim that the district court's decision adopting the Special Master's recommendation sanctions Boeing's wrongful conduct and undermines the deterrent value of this class action. We find this argument to be unpersuasive. The proposition that a court of equity never can distribute unclaimed funds to a judgment debtor is untenable in our view. Appellants cite no authority in support of such a rule in essentially private actions such as the instant one. The Spe-

cial Master placed significant emphasis on the fact that Boeing complied with the letter of the then existing law and could not have anticipated that it would have had notice duties beyond those in the Indenture. We agree.

#### (C)

Although the Winer-Kass proposal to distribute the unclaimed fund to claiming class members is unacceptable for the reasons stated above, the proposal to apply §§ 2041–2042 in equity to this portion of the fund presents a closer question.

The critical determining factor here, however, is that trial courts are given broad discretionary powers in shaping equitable decrees. "[E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Lemon v. Kurtzman,* 411 U.S. 192, 200 (1973) (footnotes omitted). Appellate review is narrow. *Id.* We believe that this principle should apply to equitable decrees involving the distribution of any unclaimed class action fund. As the *Panhandle* court stated:

"To what extent, if at all, the applicant should be reimbursed out of the earnings and the undistributable residue of the fund, will depend, we think, upon the circumstances of the particular case, and must be left largely to the sound judgment and discretion of the court which is charged with the distribution."

*Panhandle Eastern Pipe Line Co. v. Federal Power Commission, supra,* 179 F.2d at 902. Although under certain circumstances a court of appeals may be called upon to make the *initial* decision regarding the equitable distribution of an unclaimed fund, *e.g., Panhandle, supra,* 179 F.2d at 898–900, in the instant case that is not our function as a reviewing court. Reasonable minds may differ on whether the plan recommended by the Special Master and adopted by the district court was the most equitable. Based on the facts, procedural history and conduct of the parties disclosed by this record, however, we cannot say that the court

abused its discretion in formulating this distribution plan. The Special Master correctly concluded that the superior equitable interest is that of the non-claiming class members. The court's plan preserves that interest.

## IV.

The State of New York also appeals from the court's denial of its motion to intervene. A similar motion by the State of Illinois was denied. Illinois has not appealed.

New York contends that the unclaimed judgment fund should be deposited with the Treasury. The state then could claim the fund by escheat at a later time, pursuant to federal statutory and case law and New York escheat law.

The right to intervene is set forth in Fed.R.Civ.P. 24(a)(2) which provides in pertinent part:

"Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The court adopted the Special Master's recommendation that the motion to intervene be denied because (1) New York's motion was not timely, (2) New York did not have a significantly protectable interest, (3) New York was not so situated that as a practical matter its ability to protect its interest may be impaired or impeded, and (4) New York's interest was adequately represented by existing parties. Since we find that New York's interest was adequately represented in the district court and since this factor is dispositive of New York's appeal, we believe that it is neither necessary nor appropriate for us to reach the court's findings with respect to the other requirements of Rule 24(a)(2). *United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2 Cir.1978).

The Special Master found that New York seeks to have the fund placed in the Treasury pursuant to §§ 2041–2042 and that this is what the appellants represented by the Kass firm argued is the correct disposition of the unclaimed fund. New York contends that, although the arguments advanced by the Kass firm are similar, they are not congruent with those of New York. According to New York, Kass has urged that the unclaimed fund be distributed to claiming plaintiffs—a proposition inconsistent with New York's interest. It strikes us that this latter argument was advanced by Kass only as a last resort alternative to giving the money to Boeing. Clearly, the main thrust of the Kass argument was that the Treasury should receive the fund pursuant to §§ 2041–2042.

The Court adopted the Special Master's recommendation that the interests of the State of New York were more than adequately represented by the arguments urged by the existing parties. Since this ruling cannot be characterized as an abuse of discretion, we affirm it. *United States Postal Service v. Brennan, supra,* 579 F.2d at 191; *Rios v. Enterprise Association Steamfitters Local Union # 638,* 520 F.2d 352, 355 (2 Cir.1975).

Moreover, New York's arguments set forth in its amicus curiae brief were thoroughly considered by the Special Master and the district court. We also have carefully considered the claims of New York in our Court as set forth by its counsel in oral argument and its briefs which we have treated as those of an amicus curiae.

We affirm the order of the district court in all respects, with costs to appellee in this Court.

Affirmed.