In re SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION.

No. MDL–721.

Civil No. 87–0006 (RLA).

United States District Court,
D. Puerto Rico.

Jan. 7, 2010.

Areis David Quintero, pro se.

*ORDER NO. 749 IN THE MATTER OF FINAL DISPOSITION OF UNCLAIMED FUNDS*

RAYMOND L. ACOSTA, District Judge.

After twenty years since the final distribution was effected in these proceedings, the time has come for the Court to dispose of the settlement funds that have gone unclaimed in this litigation. These funds are derived from several prior settlement fund distributions carried out by the Court during the past 18 years,[1] which have remained unclaimed despite numerous efforts by the Court and counsel to identify corresponding plaintiff recipients.[2]

It is not uncommon at the conclusion of a mass tort litigation action to have funds leftover, which, for a number of reasons, cannot be distributed to the parties entitled to them because these plaintiffs or their heirs simply cannot be located. In such instances, the responsibility falls on the Court to direct the disposition of these funds.

In ordering distribution of unclaimed funds, the courts rely on their general equity power or on what is commonly referred to as the *cy pres* doctrine.

"The cy pres doctrine originated in the common law as a method of fairly distributing a trust fund, the original purpose of which failed in some respect. The term cy

1. *See, e.g.,* Order No. 346, In the Matter of the First Distribution of the Settlement Award (docket No. 17022); Order No. 348, In the Matter of Clarification of Order No. 346 (docket No. 17046); Order No. 364, Approving Distribution Reports and Ordering Distribution of Plaintiffs' Awards ... (docket No. 17178); Order No. 685, Approving PSC Report of Reserve Accounts and Order for Final Distribution (docket No. 19414).

2. *See* Order No. 743 Authorizing Publication of Notice Regarding Unclaimed Funds (docket No. 19512). *See also,* Order No. 680, In the Matter of Missing Plaintiffs (docket No. 19409); Order No. 671, In the Matter of Newspaper Ads to Locate Missing Plaintiffs (docket No. 19388), Order No. 647 In the Matter of Settlement Distribution Confirmation Forms (docket No. 19323).

pres derived from the Norman French term 'cy pres comme possible' which means 'as near as possible.' Under the cy pres doctrine, once a trust fund's original purpose fails, the fund is to be distributed to the 'next best' use." Kevin M. Forde, *What Can a Court Do With Leftover Class Action Funds? Almost Anything!* 35 No. 3 Judges' J. 19 (1996) (internal citations omitted).

Courts have claimed broad discretion in determining how to satisfy the "next best" use criteria. *Id.* Indeed, federal and state courts have distributed unclaimed funds to educational institutions or charities, legal assistance foundations, law schools, law libraries, as well as public awareness and environmental law programs.[3]

Although the prospect of undistributed funds raises the possibility that these monies should "escheat" to the federal government as unclaimed property, some courts, faced with analogous situations, have found escheat laws inapposite, and concluded that courts of equity may dispose of funds in a fair manner without being compelled to utilize the federal statutes. See, *e.g. Van Gemert v. Boeing Co.*, 739 F.2d 730, 735 (2d Cir.1984). The *Van Gemert* court explained:

> We hold that [28 U.S.C.] § 2041 does not limit the discretion of the district court to control the unclaimed portion of a class action judgment fund. Whether the money has been paid into the court or whether an alternative method of administering payment is used, the money held is within this court's jurisdiction and subject to the court's order ... The statutes referred to do not control when a court fashions a plan for distributing unclaimed funds.

The *Van Gemert* court further noted that "the critical determining factor ... is that trial courts are given broad discretionary powers in shaping equitable decrees. Equitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Id.* at 737 (Citations, quotation marks and brackets omitted).

Another cy pres method of distributing excess funds calls for their disposition by judicial resolution, after application and suggestions to the court by interested persons or parties, allowing thereby for the creation of a flexible, equitable remedy. This method allows the court to avoid the high costs associated with administering and distributing the trust funds once it is clear that the original purposes of the fund cannot be realistically achieved. This is what we propose to do today.

It is perfectly plain to the Court that since the Dupont fire took place in 1987, it would be impossible, as a practical matter, to track down all the plaintiffs and attempt to make some sort of *pro rata* distribution of the excess funds, since the costs entailed would consume a substantial quantity of the monies. On the other hand, providing disbursement of the residual monies to established charitable organizations, including those devoted to improvements in the administration of justice, provides a flexible, equitable remedy.

Thus, we conclude that, while use of funds for purposes closely related to their origin might be the best application, the *cy pres* doctrine and the courts' broad equitable powers now permit use of these funds for other public interest purposes by either educational, charitable, or other public service organizations, both for current pro-

---

3. A comprehensive list of the various and mixed disposition of unclaimed trust funds can be found in Forde, *supra* at 21 to 23.

grams or to constitute an endowment and source of future income for long-range programs. The court is fully aware of the advantages of having endowment income to supplement current contributions to finance charitable operations.[4] We have before us a submission and application from such an organization, the Animal Legal Defense.Fund.[5]

Because the Court believes the monies could be used for a truly worthy cause rather than continue to lie fallow, the Court hereby APPROVES a *cy pres* distribution of the funds remaining unclaimed as of date to the Animal Legal Defense Fund, a charitable organization, to continue its work of protecting the lives and advancing the interests of animals through the legal system by focusing on the following organizational goals:

- providing pro bono assistance to prosecutors and law enforcement handling cruelty cases;
- working to strengthen anti-cruelty laws at the federal, state, territorial and local level;
- providing public education though seminars, workshops, resources, and other outreach efforts;
- promoting and encouraging the future of animal law through student animal law chapters, and coordinating scholarships, clerking and internship and grant opportunities for law students and legal professionals alike;
- filing groundbreaking lawsuits to stop animal abuse and expand the boundaries of animal law.

Based on the foregoing, and since the parties to this action have received proper notice through Order No. 743, issued on July 28, 2009 (docket No. 19512), the Clerk of the Court is hereby directed to issue a check in the amount of **$126,977.49**, corresponding to the total of the unclaimed funds in this case, to the Animal Legal Defense Fund and mail it to their address: 170 East Cotati Avenue, Cotati, California 94931, accompanied with a copy of this Order and a written acknowledgment to be signed by its Chairperson or Executive Director. The duly signed written acknowledgment is to be returned and filed with the Court no later than **February 10, 2010**. Acceptance of the distribution shall constitute an undertaking by the Animal Legal Defense Fund to use the funds in the manner proposed to the Court and summarized in this Order.[6]

IT IS SO ORDERED.

### EXHIBIT A

Portland Office

919 SW Taylor Street

4th Floor

Portland, OR 97205

T 503.231.1602

F 503.231.1578

National Headquarters

170 East Cotati Avenue

Cotati, California 94931

T 707.795.2533

F 707.795.7280

---

**4.** See *Superior Beverage Co. v. Owens–Illinois, Inc.*, 827 F.Supp. 477, 479–80 (N.D.Ill.1993).

**5.** See letter dated August 13, 2009, attached hereto as Exhibit A.

**6.** See generally, *In re: Motorsports Merch. Antitrust Litig.*, 112 F.Supp.2d 1329 (N.D.Ga.

2000) (*cy pres* distribution of excess funds made to several charities, including Make–a–Wish Foundation; the Red Cross; the Lawyers' Foundation of Georgia; Kids' Chance; and the Susan G. Komen Breast Cancer Foundation, among others).

info@aldf.org

aldf.org

August 13, 2009

The Honorable Raymond L. Acosta

José V. Toledo U.S. Courthouse

300 Recinto Sur Street, Third Floor

San Juan, PR 00901

Dear Judge Acosta:

We recently became aware that there may be some unclaimed funds in the San Juan Dupont Plaza Hotel Fire Litigation (MDL–721), and would very much appreciate your consideration of us as a cy pres award of such funds.

As background, the Animal Legal Defense Fund (ALDF) was founded in 1979 by attorneys active in shaping the emerging field of animal law. As a national non-profit legal organization, ALDF has blazed the trail for stronger enforcement of anti-cruelty laws and more humane treatment of animals in every corner of American life. Today ALDF's groundbreaking efforts to push the U.S. legal system to end the suffering of abused animals are supported by hundreds of dedicated attorneys and more than 100,000 members. Just this month, our founder, Joyce Tischler, was honored by the American Bar Association with the *Excellence in the Advancement of Animal Law Award* for her three decades of work helping to make ALDF what it is today.

In addition to our national headquarters in the San Francisco Bay Area, ALDF maintains an office in Portland, Oregon, and has other staff members located across the country. Complementing the work of ALDF's full-time staff are dozens of illegal professional volunteers, including many of the nation's top law firms with

whom ALDF has developed pro bono relationships.

ALDF is an ideal choice for cy pres awards. Our slogan is "Winning the Case Against Cruelty" and each of our programs id design towards protecting the lives and advancing the interests of animals through the legal system. As there is a strong correlation between those who abuse animals and those who commit other acts of violence, we know that through our efforts to protect animals, we help make communities safer for everyone, both animals and human alike.

ALDF protects animals by working towards the following organizational goals:

√ Providing pro bono assistance to prosecutors and law enforcement handling cruelty cases

√ Working to strength anti-cruelty laws at the federal, state, territorial local level.

√ Nurturing the future of animal law through Student Animal Legal Defense Fund (SALDF) chapters and our Animal Law Program.

√ Filing groundbreaking lawsuits to stop animal abuse and expand the boundaries of animal law.

√ Providing public education through seminars, workshops, resources and other outreach efforts.

ALDF's current programs and activities include: (1) *Animal Law Program;* (2) *Criminal Justice Program;* (3) *Litigation Program.*

1. The *Animal Law Program* (ALP) works closely with law students and professionals to advance the emerging filed of animal law. This program collaborates with students, faculty, and scholl administrations to facilitate the development of animal law courses and assists law students in forming student animal law

groups, such as SALDF chapters (now at 41 chapters).

Currently, animal law is being taught at more than 112 law schools in the country, including some of the most respected and highly ranked schools like Harvard, Stanford, UCLA, Northwestern, University of Michigan and Duke. Many ALDF staff attorneys teach these courses at various schools throughout the country.

During the past year, ALDF helped launch the *Center for Animal Law Studies,* a first-of-its-kind collaboration between ALDF and the Lewis & Clark Law School of Portland, Oregon. As an academic and practical for the burgeoning field of animal law, the *Center for Animal Law Studies* develops and provides essential programs and services for law students under the guidance of experienced animal law professors and ALDF attorneys.

ALP also assists bar association members in forming animal law bar sections and partners with pro bono coordinators in developing animal law volunteer opportunities at their firms.

History and emerging legal issues come together as attorneys, law students, professors, and activist around the world convene for ALDF's "The Future of Animal Law" conferences. These bi-yearly events have been held at Yale, Harvard, and the next one is scheduled for the University of Chicago in 2010.

ALP also coordinates scholarships, clerking, internships and grant opportunities for law students and legal professionals alike.

2. ALDF's *Criminal Justice Program* (CJP) is staffed by attorneys, including former prosecutors, with expertise in animal protection law. Through CJP, we:

- Provide pro bono assistance and prosecutors enforcement agencies to ensure state criminal anti-cruelty statutes are vigorously enforced, and that those convicted of abuse, cruelty and neglect receive appropriate sentences.

- Work with legislators to enact felony anti-cruelty statutes in states and territories that do not yet have them, and to upgrade existing laws in those that do.

- Conduct legal research, draft friend-of-the-court briefs, locate expert witnesses and provide a wide range of other essential talents and experience.

- Maintain a nationwide database of animal cruelty cases, and make the information we gather—including convictions and sentences—available to prosecutors, judges, legislators and researchers.

Our CJP resources provide citizen guides on what to do when anti-cruelty laws have been broken, what to do if your companion has been injured or killed, how to find an attorney, and many other essential resources including models laws, collections, and reports, including:

- Our one-of-the-kind compendium *Animal Protection Laws of the USA & Canada.* This 3,400 page collection is the most comprehensive animal protection laws resource of its kind available. It features a detailed survey of the animal protection and related statutes for all 50 states and territories of the USA and all provinces and territories of Canada; up-to-date versions of each jurisdiction's laws; easy navigation; and fully searchable content.

- Our *State Animal Protection Laws Ranking Report & Canadian Animal Protections Laws Ranking Report.* These highly-media-generating annual reports rank the general comprehen-

siveness and relative strength of the animal protection laws of each state, province and territory in the USA & Canada.

3. In ALDF's litigation work, staff attorneys may bring suit themselves or may retain outside counsel to represent it. ALDF staff may also file as a named plaintiff or as the attorneys for other organizations or individuals. Civil actions on behalf of animals often include filing amicus curiae briefs arguing the case for recognition of the bonds between humans and nonhuman animals and formal complaints against government agencies charged with enforcing laws meant to protect animals.

Because ALDF provides strict ongoing oversight of all funding we receive, parties can be confident that cy pres funds will be used in the manner contemplated by the court. We undergo rigorous quarterly and annual reviews of each program area of work, the stated objectives and goals for that year, and an objective analysis of whether the goals and objectives were obtained.

Thanks to our many supporters, ALDF is making a real impact in its efforts to increase the protection of animals, to support the development of animal law and the next generation of animal law lawyers, and to educate law enforcement and citizens across the country on animal law and ways to reduce cruelty to animals and other forms of community violence. However, with more than 63% of all U.S. householding including companion animals, combined with the limited and dwindling resources facing communities today, the gap between the work and services we can provide and the actual need is daunting.

A cy pres award is one of the best means available to help close this gap, by bolstering existing programs and providing support for expansion of these efforts.

Thank you for your consideration of us as a cy pres award recipient, and please let me know if you have any questions or would like any additional information about ALDF and our vital work.

Sincerely,

Stephan K. Otto, Esq.

Director of Legislative Affairs.

Enclosures