**In re the Marriage of Katherine G. Landers HAUBEIN, Petitioner-Respondent,**

**and**

**David M. Haubein, Respondent-Appellant.**

No. 14457.

Missouri Court of Appeals, Southern District.

Feb. 5, 1987.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 27, 1987.

Application to Transfer Denied April 14, 1987.

Donald W. Ingrum, Branson, for respondent-appellant.

John E. McKay, Kansas City, for petitioner-respondent.

GREENE, Presiding Judge.

David M. Haubein (Dave) appeals from those portions of a dissolution decree that awarded primary custody of his daughter, Ann Elizabeth Haubein, to the child's mother, Katherine Landers Haubein (Kate), and that awarded Kate $6,000 attorney fees. Although Dave's points relied on in his

appeal could be more specific, we gather that he is contending that the custody award was against the weight of the evidence, and that the attorney fee award was unauthorized as no such relief was requested in Kate's pleadings.

Dave and Kate were married December 29, 1979, in Lockwood, Missouri. Dave, with his parents and brother, are engaged in various agribusiness operations in Lockwood, and is a successful young businessman. Kate had previously been married to Stan Landers. This union produced a son, Stoney, who was born April 10, 1975. Kate divorced Stan in 1978, and was given custody of Stoney in the dissolution decree. From the record, it appears that Kate's only career experience, prior to her marriage to Dave, was as a "Playboy bunny" in Dallas, Texas.

After Dave and Kate were married, they, together with Stoney, occupied the family home in Lockwood. Their daughter, Ann, was born April 14, 1982. In addition to attending to his business obligations, Dave was a devoted father and stepfather, and participated in the daily caring for Ann and Stoney. He was a member of the church council, a member of the school board, and president of the parent teacher association. Dave has a close family relationship with his parents and brother, who also live in Lockwood, and are associated in the various family businesses.

Kate, evidently tiring of her role as a housewife and mother, decided to seek a career in the entertainment business as a singer, songwriter, model, and actress. She gravitated to Branson, Missouri, which is becoming a center for local aspirants seeking careers in the country music business. On June 14, 1983, Kate entered into a contract with Janbill Ltd. The contract provided that Janbill would expend the funds necessary for the advancement of Kate's career and manage her career interests in return for 50 percent of her earnings. Janbill is a derivative of the names of Janet and Bill Dailey. Janet Dailey is a writer, specializing in romance novels. Janet is Bill's fourth wife.

Bill Dailey has had a varied career, including being a pitch man for "freak" and "hoot" shows in carnivals, a stint in the Merchant Marines, and various business enterprises, including the management of Janet's career. He uses obscene language, such as the words "fuck," "teats," and "ass" as a part of his ordinary conversation and, at the present time, spends a good part of his time in the promotion and management of young females who are seeking fame as writers and entertainers.

In August of 1984, Kate, claiming to be a resident of Taney County, Missouri, where Branson is located, filed a petition requesting a decree of legal separation from Dave, custody of Ann, a division of the marital property, child support, and maintenance. Dave responded by filing a cross petition in which he asked that his marriage to Kate be dissolved, that the marital property be divided, and that he be awarded custody of Ann.

The trial commenced on December 10, 1984, and lasted four days. Thirty-nine witnesses testified, and the transcript consists of 1,243 pages and 97 exhibits. Most of the testimony consisted of charges and countercharges concerning Kate's fitness as a mother, and which parent could provide the most stable home environment for Ann. The trial court made findings of fact and conclusions of law, and entered judgment dissolving the marriage, dividing the marital property, assigning responsibility for the debts of the parties, giving Dave and Kate joint custody of Ann but placing primary custody with Kate during the school year, subject to specific visitation rights of Dave, and awarding Kate $450 a month child support for the months Ann was in her custody.

The trial court's reasoning for granting primary physical custody of Ann to Kate is expressed in a memorandum filed on July 30, 1985, in which the trial court observed that 1) though neither party was perfect, both parties had exhibited good "parenting" qualities; 2) Ann could expect a stable environment with Dave, if placed in Dave's custody, while Kate's future stability was suspect; 3) the bond between Ann and her

half brother, Stoney, was very strong; and, 4) psychological trauma could be experienced by Ann if she were separated from her half brother. In deciding between "[b]etter stability for Ann in Dave's custody," or "[t]he strong bond which exists between Ann and Stoney," the trial court found that "Ann needs a stable environment in her developmental stages; and Dave can better provide this for her, while petitioner's stability is suspect," but, nevertheless, chose "Kate, Ann, Stoney and questionable stability over Dave, Ann and apparent stability," and gave primary custody of Ann to Kate.

■ Since this case was court-tried, the judgment must be upheld, if it is supported by substantial evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or application of law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Our review convinces us that the overwhelming weight of the evidence supports the trial court's conclusion that Dave would provide a more stable home environment for Ann than would Kate. The evidence conclusively shows that from the moment Kate chose to forsake her duties as a wife and mother, for a career as an entertainer, that Dave provided the primary care for his little girl. He dressed, fed, and administered to all of Ann's wants and needs, and arranged for baby-sitters to take care of her while he was at work. He took her to Sunday school and church, and came home from work in midmorning and midafternoon, as well as at lunchtime, to check on his daughter. All of the baby-sitters and persons closely associated with Dave and Kate, including Kate's best friend, Linda Schilling, testified as witnesses for Dave, and said that when the child is hungry or hurt, she asks for her father, not Kate.

The Haubein family is closeknit and operates as a family unit of grandparents, Dave, his brother, Ken, and friends and neighbors. Dave's home, where Ann lived, is comfortable and well furnished, and Dave enjoys a substantial income. In contrast, Kate has chosen to pursue a career as an entertainer. Prior to leaving her first husband, Kate had elective surgery, whereby silicone implants were inserted in her breasts to enhance their size and shape, following which she was employed as a Playboy bunny. When she signed an employment contract in which Bill Dailey agreed to be her manager, she promised "to devote myself to my career and do all things necessary" in the pursuit of her career. She has written songs and released records, which she and Dailey hope can be expanded into national record album releases. This endeavor will necessitate numerous promotional trips to major market areas such as Los Angeles and New York. Kate has already appeared in several commercials promoting products such as Shell Oil, Lee Jeans, several novels, and a movie titled "Foxfire Light," in which she had a bit part. If her movie career advances, Kate plans to live in a trailer on the movie set. In connection with the international promotion of novels, Kate is anticipating trips to Europe, but does not plan to take Ann with her.

In the 12 months preceding the filing of the petition for dissolution of the marriage, Kate was spending at least 20 percent of her time away from her husband and child. Because of Kate's expressed fear that a pregnancy would damage her career, Dave had a vasectomy. There was substantial evidence that Bill Dailey and Kate made numerous out of town trips for the alleged purpose of promoting her career. They travelled to Dallas, Toronto, Memphis, Nashville, Atlantic City, Las Vegas, New York and Los Angeles. There was considerable evidence that these trips were not entirely platonic, including Dave's discovery of contraceptive sponges and spermatocidal cream in Kate's luggage after she had returned from one trip to New York with Bill in May of 1984. On several occasions, Kate told Dave that she would not be home that evening because she was going to spend the night with her mother, Betty Moore, who lived in Springfield. However, when Dave called Mrs. Moore, she would tell him Kate had not been there. Mrs. Moore, incidentally, testified as a witness for Dave, and attested to his good

character and the exemplary way that he cared for Ann and Stoney.

While we could detail a great deal more of the uncontroverted evidence, including the fact that Kate herself testified that she intended to intensify, rather than decrease, her efforts to have a national and international career as an entertainer, which would logically separate her from her children even more than the present circumstances, we need not do so, as it is evident that the trial court was correct in concluding that Dave could, and would, provide a more stable home environment for Ann than could Kate.

■ The only remaining question is whether the trial court erred in its assumption that the psychological trauma Ann might suffer by being separated from her half brother, Stoney, was of greater importance than the greater stability she would have by being in the primary custody of Dave. We find the trial court's assumption in that regard to be fatally flawed. Kate's custody of Stoney is not necessarily a permanent thing. The record shows that Stoney's custody has been challenged by his father, Stan Landers, in a motion to modify, in which Landers is seeking custody of his son. If Landers prevails on his motion, on which subject we express no opinion as that issue is not at the present properly before us, Ann would be deprived of Stoney's companionship, regardless of what the trial court did here. In addition, the evidence here is overwhelming that Dave has a good relationship with Stoney, as well as with Stoney's father, and would encourage continued close contact between the two children, if Mr. Landers gained custody of his son.

■ In deciding child custody matters, no single consideration is more important than the home environment in which the child will live. *In re Marriage of P.I.M.,* 665 S.W.2d 670, 672 (Mo.App.1984). In that case, the trial court's award of custody of children to the mother was reversed outright and custody placed with the father because the evidence showed the father provided a more wholesome and stable environment for the child's development than did the mother. In the case of *In re Marriage of Plank,* 670 S.W.2d 185 (Mo.App. 1984), the court awarded custody of a four year old female child to the father for the reason that he had demonstrated that he was more attentive to the day-to-day needs of his daughter than was his wife. Such is the case here. In addition, there is no question but that Kate's choice of a career has affected the best interest of her daughter.

■ In circumstances such as we have here, courts have consistently denied mothers' claims for custody, especially where there is substantial evidence the father, or, in some cases, the grandparents, could provide a more suitable home environment. *See Schmidt v. Schmidt,* 591 S.W.2d 260 (Mo.App.1979); *D.L.C. v. L.C.C.,* 559 S.W.2d 623 (Mo.App.1977); *In re Marriage of Mitchell,* 103 Ill.App.3d 242, 58 Ill.Dec. 684, 430 N.E.2d 716 (1981); *Cook v. Cobb,* 271 S.C. 136, 245 S.E.2d 612, 614 (1978); and *Matter of Marriage of Lundgren,* 31 Or.App. 967, 572 P.2d 325 (1977). In addition, we do not feel the trial court gave sufficient consideration to the negative effect Kate's lifestyle and travel plans would have on the child. Courts should not wait until the damage is done and then attempt to repair the damage, but should swiftly act in the best interest of the child when it is evident, as here, there is a reasonable likelihood that the present circumstances will ultimately have an adverse effect upon the child. *Ryan v. Ryan,* 652 S.W.2d 313, 316 (Mo.App.1983). That portion of the trial court's judgment placing primary custody of Ann Elizabeth Haubein in Kate Landers Haubein's, now Kate Landers, is not supported by substantial evidence, and is against the greater weight of the evidence, and must be reversed.

Dave's claim that there was no basis for the award of attorney fees to Kate, because there was no prayer for attorney fees in her petition and the issue was not tried by consent, has no merit. In a motion

for temporary allowances filed November 1, 1984, Kate stated that she had no money to pay attorney fees, court costs, and expenses incidental to trial preparation, and requested $6,000 for those purposes, as well as requesting money for child support and maintenance. That motion was still pending at time of trial, and had not been abandoned. At trial, Kate's attorney offered testimony that his fees in the case were at least $7,500. Dave's attorney did not question the amount of attorney fees or their reasonableness, but only stated that the issue had not been properly pleaded.

■ The award of attorney fees in cases of this nature is discretionary, and we find no abuse of that discretion here. Dave had ample notice of Kate's claim for attorney fees and an opportunity to be heard on the subject. The trial court was not required to hear evidence on the extent and value of the legal services rendered, as the judge is considered an expert on that question and can fix that amount without the aid of evidence. *In re Marriage of Brewer*, 592 S.W.2d 529, 536 (Mo.App.1979). The point has no merit.

Those portions of the dissolution decree entered in this cause dissolving the marriage of Katherine Landers Haubein and David Haubein, dividing the marital property and debts, decreeing that neither party shall remove Ann Elizabeth Haubein from the state for any significant period of time without obtaining written permission from the other party or the court, that neither pay maintenance to the other, restoring Kate's former name of Katherine Gayle Landers, and ordering Dave to pay Kate $6,000 for attorney fees are affirmed. All portions of the decree relating to child custody, visitation, and child support are reversed, and the cause is remanded to the trial court with directions to award care and custody of Ann Elizabeth Haubein to David M. Haubein, to grant specific visitation rights to Katherine Gayle Landers consistent with the best interests of the child, including liberal visitation privileges during the summer months, and that the court

costs be divided equally between the parties.

CROW, C.J., and PREWITT, J., concur.