**Meredith SUHR, Respondent,**

v.

**Ash OKORN, Respondent,**

**Richard Okorn, Appellant.**

No. WD 62736.

Missouri Court of Appeals, Western District.

April 27, 2004.

---

Weldon W. Perry, Jr., Lexington, MO, for Respondent Suhr.

Todd A. Nielsen, Kansas City, MO, for Appellant.

Before LOWENSTEIN, P.J., and SMITH and HOWARD, JJ.

VICTOR C. HOWARD, Judge.

Richard Okorn (Grandfather) moved to modify the Judgment of Dissolution of Marriage granted to his son, Ash Okorn (Father), and his former daughter-in-law, Meredith Suhr (Mother). In his motion, he sought overnight visitation with his granddaughter but not his grandson. After a hearing, the court determined that it was not in the best interests of both children to allow Grandfather visitation with only his granddaughter. However, the court ordered Mother to reasonably notify Grandfather of public activities or functions that the children are involved in. This appeal follows.

As explained below, section 452.402 vests the trial court with discretion in determining whether to grant grandparent visitation. Under the circumstances of this case, we hold that the trial court did not abuse its discretion in refusing to grant Grandfather visitation with only his granddaughter.

## Background

Viewing the evidence in a light most favorable to the court's denial of visitation, the evidence offered at the hearing on Grandfather's Motion to Modify showed as follows:

During their marriage Mother and Father had two children: Austin Okorn, born January 17, 1991, and Ashley Okorn, born April 5, 1992. Mother and Father later divorced, and Father was granted primary physical custody of the children. During the marriage and after his son received custody, Grandfather had a close relationship with his grandchildren. They often visited him at his farm, helping him with farm chores.

In 2001, Father pled guilty to assaulting both children, who had been removed from his custody by DFS after allegations of abuse. As a result of his pleas, Father was placed on probation, a condition of which was that he could have no contact or association with Ashley and Austin. As a result, in August of 2001, the original Judgment of Dissolution was modified, transferring custody of the children to Mother.[1] After the judgment was modified, Grandfather had no contact with Mother, Ashley, or Austin.

On April 23, 2002, Grandfather filed a petition for grandparent visitation with Ashley in Caldwell County, Missouri. The parties stipulated to a transfer of venue to Lafayette County, Missouri. After transfer, Appellant amended his petition for visitation with Ashley into the form of a motion to modify, and the case was consolidated by agreement with Mother and Fa-

---

1. Because the pleadings from the previous dissolution proceedings and Father's criminal case are not a part of the record on appeal, it is unclear exactly when some events occurred and the details. However, there is no dispute as to testimony concerning the relevant terms of the Judgment of Dissolution regarding Father's custody of the children, father's guilty pleas, and the resulting amendment of the Judgment of Dissolution transferring custody to Mother.

ther's dissolution file.[2] In his motion, Grandfather alleged that he had been unreasonably denied visitation with Ashley for more than ninety days.

On March 6, 2003, the motion court held a hearing on Grandfather's motion to modify. Grandfather testified that he and Father are "extremely close and will do anything for each other," and that he is "proud of [Father]." In fact, although Father was not called as a witness at the modification hearing, the record reflects that Father attended the hearing with Grandfather. Grandfather explained that he sought visitation with only Ashley because he felt that Austin had falsely accused Father of abusing him. He felt that Father was a "victim" of the criminal justice system and had been "set up." Grandfather asked the court for occasional overnight visitation with Ashley at his farmhouse, which was "between one and two miles to walk" from Father's house. He admitted that he never contacted the children nor did he ask Mother about seeing them after Father lost custody.

Mother testified that, although "it's important for [her] kids to see their grandfather, ... there's something very amiss" about his "wanting to see only [her] daughter." She explained that both Ashley and Austin love Grandfather and would like to visit him, but due to the "history" with Father and Grandfather's close relationship and proximity to Father, she was concerned and "uncomfortable" about Grandfather's request that he have overnight visitation at his home with only Ashley. She was also concerned about his refusal to see Austin. When asked why she was concerned that Grandfather would allow Father contact with Ashley if he had overnight visitation with her at his farmhouse, she explained:

> Well, with [Father] being in close proximity, it is very real that he will be present at [Grandfather's]. They do—they're within walking distance. And it's—there's no doubt in my mind that he will be there. Ashley is very emotionally subject to—I can't think of what I'm trying to say. She's just very emotionally delicate, I guess, and it's easy for her to be manipulated verbally. I will not put my children through that. The fact that [Grandfather] refuses to see [Austin] is wrong. It hurts [Austin] deeply. [Austin]—and even [Ashley] has backed up Austin's story about what happened that night [ (referring to the allegations of abuse, which were not detailed at the hearing) ]. They both tell the same story. So if [Grandfather is] saying that [Austin] had lied, then [Ashley] has lied also. This is—I just don't understand.

Mother further explained that Grandfather had never made any effort to contact her or the children after she received custody. She was not trying to limit or preclude Grandfather from being able visit and interact with his grandchildren. Rather, given the circumstances, she asked the court to make sure that any visitations be supervised in a restricted setting. Prior to the conclusion of her testimony, the court examined Mother. The following exchange occurred:

> THE COURT: ... I just want to be clear: If I could be assured that ... [Father] wasn't going to be there, you

---

2. *See Tompkins v. Ford,* WD 62956 *3, 2004 WL 884465, —— S.W.3d —— (April 27, 2004) (holding that when, as here, the grandchild's parents are divorced and the court has entered custody and visitation orders in a dissolution judgment, a grandparent seeking court-ordered visitation with the child must file his or her request as a motion to modify the existing dissolution judgment as directed in section 452.402.1(1), not as an independent action).

would have no problem with the kids spending some time on their grandfather's farm?

[MOTHER]: Right, but not overnight.

THE COURT: Okay. And would you have a problem if Ashley did it by herself?

[MOTHER]: Yes.

Counsel declined the court's subsequent offer of further examination of Mother. After summation of their arguments, the court addressed the parties:

Well, I'm a firm believer that children need as many people in their lives to love them as they can, and grandparents should play an important part in children's lives. And I can already tell you, [counsel for Grandfather] that I'm looking at this case from a standpoint of best interest of both children. And if your client is telling me he only wants to have visits with Ashley, this case is going to be over pretty quickly. If you want to talk to your client and discuss it with him, that's fine, because I am going to consider that the best interests of Austin are going to be more damaged by just going than what Ashley will benefit. If your client wants to consider visits with both of them, then I will move on to that step; otherwise, I will be done with this case. . . .

Counsel for Grandfather then accepted the court's offer to take some time to discuss the matter with Grandfather, after which counsel announced to the court: "Your Honor, with all due respect as to what the court has said, my client chooses to honor his own conscience and considerations and still requests only visitation with his granddaughter and not his grandson." Grandfather personally acknowledged such for the record. The court then announced, "With that being said, the court is going to deny any visitation." The court ordered counsel to prepare an order denying the overnight visitation with Ashley requested by Grandfather but ordering Mother to reasonably notify Grandfather of public activities or functions that the children are involved in, so Grandfather could attend. The court reiterated to Grandfather:

I firmly believe grandparents need a part of children's lives, and I would like for you to do that, sir. I would like for you to go see their events. I was prepared to give you visitation with both children, quite honestly, including visitation at your house, but you made my job simpler, because I have a strong feeling that it's going to be more harmful to Austin than it would benefit Ashley to allow the visitation. If you decide down the road that you want to have a change of heart or something and you want to come back to court, I think we can probably settle this pretty easily, but as of right now that is my feeling with regards to the best interests of the children. And I think since this is a case that involves two siblings, even though the pleading only asks for visitation to one, I still have to weigh the best interest of both children. . . .

Judgment was entered accordingly. This appeal follows.

### Standard of Review

Our review of the court's denial of grandparent visitation is pursuant to the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), i.e. this court "will affirm the decision below unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Blakely v. Blakely*, 83 S.W.3d 537, 540 (Mo. banc 2002).

### Section 452.402: Grandparent Visitation

Section 452.402,[3] which governs grandparent visitation, provides in relevant part:

1. The court *may* grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court *may* grant grandparent visitation when:

(1) The parents of the child have filed for dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation rights when such rights have been denied to them;

\* \* \* [or]

(4) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days....

\* \* \*

2. The court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair the child's emotional development. Visitation *may* only be ordered when the court finds such visitation to be in the best interests of the child.... The court may order reasonable conditions or restrictions on grandparent visitation.

\* \* \*

(Emphasis added.) In his motion to modify, Grandfather claimed that Mother had unreasonably denied him visitation with Ashley for a period exceeding ninety days.

## Discussion

In his sole point on appeal, Grandfather claims that the trial court erred in denying him visitation with Ashley "because the judgment is against the weight of the evidence, is not supported by substantial evidence and erroneously applies the law to the facts of this case in that the court determined that [Grandfather] is not entitled to visitation with his granddaughter, solely because he declines visitation with his grandson." He maintains that the trial court refused visitation with Ashley "not because of any finding of fact, but rather due to a 'feeling' experienced by the trier of fact." He insists that this "feeling" was not supported by the evidence, in that other than a conclusory opinion offered by Mother, "[t]here was not one single fact presented from which one could claim that Austin would be harmed by [Grandfather] being permitted to visit his sister Ashley, on limited occasions."

In support of his argument, Grandfather cites cases such as *In re Marriage of Haubein,* 726 S.W.2d 433 (Mo.App. S.D. 1987); *Replogle v. Replogle,* 903 S.W.2d 551 (Mo.App. W.D.1995); *Long v. Long,* 771 S.W.2d 837, 840 (Mo.App. W.D.1989); and *D.S.P. v. R.E.P.,* 800 S.W.2d 766 (Mo. App. E.D.1990), which involved the propriety of split custody determinations. In conclusion, Grandfather argues:

The law permits total separation of siblings in custody disputes, even when psychological trauma to the siblings is assumed. This case involves minor, limited visitation. Unlike the cases above, these children are not being separated. It is only common sense that a grandparent should not be forced to visit a child with whom he knows he has a strained relationship. It is equally clear that such a strained relationship should not deprive this grandfather and granddaughter from sharing their long term loving relationship during visits in the grandfather's home, as described by the trial court herein.

---

**3.** We note that section 452.402 was amended in 2002, but those amendments have no substantive bearing on the issue now before this court.

Grandfather extracts general statements from the above-cited split custody cases, without consideration for the context in which the statements were made, and seeks to analogize his visitation with only Ashley with appellate-court-sanctioned split custody determinations. In doing so, he largely disregards the standard of review and the fact that, just as is the case with grandparent visitation cases, the split custody cases are largely dependent on the unique, fact-dependent situations presented. That our appellate courts have upheld split custody determinations in those cases does not lead to the conclusion that the trial court in this case erred in considering Austin's best interests if Grandfather is granted visitation with only Ashley.

In reviewing the trial court's denial of visitation with only Ashley under the above standard of review, we note that section 452.402 provides only that the court "may" award grandparent visitation. That is, section 452.402 grants the trial court discretion in determining whether to award or deny grandparent visitation, provided the requisite statutory circumstances are present, i.e. the court must "determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair the child's emotional development." Absent an abuse of its discretion, we generally defer to the trial court's discretionary decisions. We will find an abuse of discretion "only when the trial court's decision 'is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *In re C.D.G.*, 108 S.W.3d 669, 674 (Mo.App. W.D.2002) (quot-

ing *Waisblum v. Waisblum*, 968 S.W.2d 753, 755 (Mo.App. W.D.1998)).

There was no dispute that Ashley and Grandfather shared a close relationship. While that relationship may serve as a starting point in determining best interests, the court must look at the totality of the circumstances presented, including the fact that Ashley is not the only child involved. Although Grandfather sought visitation with only Ashley, we see no reason why the court's consideration of best interests would not include the best interests of both children under the Judgment of Dissolution, which Grandfather has sought to modify. That being said, we turn to further consideration of the circumstances and evidence before the trial court:

After Father pled guilty to abusing Austin and Ashley, Grandfather made no effort to contact Ashley or Austin. Grandfather continued to insist Father was innocent and developed animosity toward Austin because he felt Austin had falsely accused Father of abuse. However, Grandfather harbored no hard feelings toward Ashley and sought visitation rights with only her.[4] Mother did not deny that Ashley and Grandfather were close. Rather, in addition to her concerns about Father and Grandfather's close relationship and proximity, she expressed a genuine concern for how Austin would be affected if the court awarded visitation with only Ashley. The court likewise acknowledged Grandfather's relationship with Ashley and recognized that grandparents play an important role in children's lives. Nevertheless, under the totality of the circumstances, the court determined that it had to consider what was in *both* children's interests. Again, this is a legiti-

4. Interestingly, although specifics are not in this record, Grandfather admitted that Father pled guilty to abusing both Ashley and Austin. As previously set forth, Mother also testified that both Ashley and Austin made the same accusations, but Grandfather only felt Austin was lying.

mate consideration under the facts of this case.

Appellant insists that the court's unwillingness to grant visitation with Ashley only on the "sole basis" that the court had a "strong feeling that it's going to be more harmful to Austin than it would benefit Ashley to allow the visitation," is not a sufficient reason to deny visitation with Ashley. He argues that "[a] practically identical 'feeling' was rejected as a reason to deny split custody of two siblings in [*Haubein*]." Despite Grandfather's argument to the contrary, here, the trial court's "feeling" is not based on a "fatally flawed" assumption of the sort discussed by the Southern District in *Haubein,* 726 S.W.2d at 436. In *Haubein,* the Southern District found the trial court's assumption—that the psychological trauma the child therein might suffer by being separated from her half-brother was of greater importance than the greater stability she would have by being in the primary custody of her father—was "fatally flawed." *Id.* The *Haubein* court so characterized the trial court's assumption because the mother's custody of the child's half-brother was "not necessarily a permanent thing"; there was a possibility that the child "would be deprived of [her half-brother's] companionship, regardless" of whether the trial court awarded mother custody of the child. *Id.* Moreover, the evidence showed that the child's father had a close relationship with the child's half-brother and his father, so, if the father was awarded custody, the child would continue to have close contact with her half-brother. *Id.* Again, *Haubein* is largely fact-dependent and does not aid Grandfather. Here, the trial court's denial of visitation with only Ashley is not based on a "faulty premise." The judgment is supported by substantial evidence, is not against the weight of the evidence, and it did not result from the erroneous application of the law to the facts of this case.

We perceive no abuse of discretion in the trial court's denial of visitation with only Ashley. Accordingly, we affirm the judgment.

LOWENSTEIN, P.J., and SMITH, J., concur.