**KANSAS ASSOCIATION OF PRIVATE INVESTIGATORS, et al; Julie Smith, Fund Administrator, Amicus Curiae, Respondents,**

v.

**Joseph J. MULVIHILL, et al., Appellants.**

No. WD 64160.

Missouri Court of Appeals, Western District.

April 5, 2005.

Lisa S. Morris, Kansas City, MO, for Appellants.

Douglas S. Stone, Kansas City, MO, for Respondent, KS. Association.

George A. Bartlett, Jefferson City, MO, for Amicus Curia.

Before: PAUL M. SPINDEN, P.J., VICTOR C. HOWARD and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

This case involves a class action suit that began in 1998. The plaintiffs include the Kansas Association of Private Investiga-

tors, a not-for-profit membership corporation, and several individual private investigators (collectively Investigators). In 2000, we affirmed the trial court's finding that two fee increases by the Kansas City, Missouri, Board of Police Commissioners (Board), one in 1988 and one in 1997, constituted void rulemaking and that the class members were entitled to refunds of those fees. *See Kansas Ass'n of Private Investigators v. Mulvihill*, 35 S.W.3d 425 (Mo.App. W.D.2000). The Board paid $2,367,389 into the circuit court of Cole County, which placed that fund under the control of a Fund Administrator.

After all of the claims were paid, over $1,000,000 remained in the fund. In March 2004, the trial court issued a judgment setting aside $25,000 as a reserve to pay any late-filing claimants and distributing the remainder of the money to various charities in Cole County, most providing services to children, and $78,049.32 to the Cole County Treasurer for expenses. The Fund Administrator distributed the money as directed by the trial court, filing her report with the trial court in April 2004. At the same time, the trial court issued a judgment approving the Fund Administrator's report and absolving her of all liability with respect to those disbursements.

The Board thereafter filed this appeal, claiming that the trial court erred in its March 2004 order. The Board raises three points on appeal. First, it claims that the trial court erred in its application of the *cy pres* doctrine to those unclaimed funds because it distributed the money to entities that had no relationship to the parties or issues in the case. Second, it claims that the trial court erred because it

did not give the parties an opportunity to be heard before making the distributions, denying the parties their due process. Finally, the Board claims that the excess money should have been returned to them because that was the most appropriate disposition of the funds.

The Investigators adopted the Board's arguments for points one and two. They differed with the Board on point three only, stating that the case should be remanded for a hearing on the distribution of the funds.

■ The distribution of unclaimed funds in a class action suit has not been directly addressed in our courts. We believe the correct standard of review is abuse of discretion. *See e.g., In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir.2002) ("We generally review a district court's *cy pres* distribution for an abuse of discretion."); *Van Gemert v. Boeing Co.*, 739 F.2d 730, 737–38 (2d Cir.1984) (trial court did not abuse its discretion in formulating the distribution plan for the unclaimed funds).

■ We will find an abuse of discretion if the trial court's decision is against the logic of the circumstances before the court at the time and is so arbitrary and unreasonable that it shocks the conscience of this court and suggests a lack of careful consideration. *Suhr v. Okorn*, 131 S.W.3d 886, 891 (Mo.App. W.D.2004).

We agree with both the appellant and the respondent; the trial court went beyond its authority in making the unclaimed distributions.[1] The trial court abused its discretion both in denying the parties due process and in the actual distribution.

---

1. We have reviewed the Fund Administrator's brief, filed as an amicus curiae. She brings up several issues that were not raised by either party, which issues therefore, we are not required to address. *Hemeyer v. KRCG–*

*TV*, 6 S.W.3d 880, 882 (Mo. banc 1999). But because some were jurisdictional issues, we considered them and found that they have no merit.

■ Both parties complain that the trial court made the distributions without giving either of them an opportunity to be heard. The trial court held no hearing concerning the unclaimed funds, and the parties stated that they were not informed that the court was taking suggestions about what to do with the remaining funds. Yet the order stated that the trial court "has given considerable thought to proper distributions and has received and considered informal suggestions and requests. The trial court, however, has independently made the determinations with respect to the distributions" that are being questioned in this appeal.

■ Governmental decisions that deprive individuals of property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment are constrained by procedural due process. *Dabin v. Dir. of Revenue,* 9 S.W.3d 610, 615 (Mo. banc 2000). "Procedural due process requires that before a person is deprived of a property interest, he or she 'must receive notice and an opportunity for a hearing appropriate to the nature of the case.'" *State v. Mann,* 23 S.W.3d 824, 836 (Mo.App. W.D.2000) (quoting *Moore v. Bd. of Educ. of Fulton Pub. School No. 58,* 836 S.W.2d 943, 947 (Mo. banc 1992)). The opportunity to be heard "must come at a meaningful time and in a meaningful manner." *Laubinger v. Laubinger,* 5 S.W.3d 166, 175 (Mo.App. W.D.1999).

Both parties had an interest in the unclaimed funds; the Investigators because the funds were part of a judgment in their favor, and the Board because it paid that money into the trial court and could possibly reclaim the funds. They were given neither notice nor an opportunity to be heard. Therefore, the trial court's distribution order in March 2004 deprived both parties of due process. On remand the trial court must hold a hearing and allow both parties to present statements and/or evidence about the distribution of the unclaimed funds.

The trial court also abused its discretion in its determination of where to distribute unclaimed funds in a class action lawsuit. This is a matter of first impression. We only found one Missouri case that even mentioned using the *cy pres* doctrine in this context, and this was in a footnote to a concurring opinion.[2] *Buchholz Mortuaries, Inc., v. Dir. of Revenue,* 113 S.W.3d 192, 196 n. 1 (Mo. banc 2003) (Wolff, J., concurring). In *Buchholz,* Judge Wolff mentioned that "[t]he fluid class recovery doctrine is a rule of equity used in class actions, based on the cy pres doctrine" to distribute funds in a class action. *Id.* He said that the court "may make an appropriate order for their distribution," but no direction was given for the application of this rule. *Id.* Other jurisdictions, however, have considered this problem and set out clear rules that we believe should apply in Missouri.

■ When courts are faced with distributing unclaimed funds from a class action, they have four options: a pro rata distribution to the class members who have

2. Although both the trial court and the Fund Administrator mention *In re Ancillary Adversary Proceeding Questions,* 89 S.W.3d 460 (Mo. banc 2002), as precedent in dealing with unclaimed funds, that case is of no help here. The appellant in that case was the state treasurer, who claimed that the unclaimed funds in four receiverships should revert to the state treasury. *Id.* at 462. The Supreme Court found that the treasurer lacked standing to collect the funds and affirmed the trial court. *Id.* at 464. The treasurer was not an original party to the case, whereas the Board was an original party in the instant case. And that case does not apply to the issues here, because no one is appealing the trial court's decision that the money should not escheat to the state.

already made claims; escheat to the government; reversion to the defendant; or a *cy pres* distribution. *In re Motorsports Merch. Antitrust Litig.*, 160 F.Supp.2d 1392, 1393–94 (N.D.Ga.2001). The trial court in this case did consider all four of these options and rejected the first three. Because neither party appealed the trial court's decision to not apply the first two options, we will not review that part of the decision. We will review the other two options and their applicability in this case.

■ The trial court decided that reversion to the Board was improper because that would reward the Board for illegally collecting fees and it found that the Board had caused numerous delays in sending notice to all the possible claimants. Although there are probably many instances when it would be inappropriate to allow unclaimed funds to revert to the defendant in a class action suit, we do not agree with the trial court that it would always be wrong.

In *Van Gemert*, the Second Circuit found that the trial court did not abuse its discretion in allowing the unclaimed funds to revert to Boeing, the defendant, with the requirement that Boeing publish notice of the fund in its annual report and pay any valid claims in perpetuity. 739 F.2d at 731, 737–38. The court found that Boeing had breached private contractual duties, not a duty to the public, and that Boeing had acted without malice or bad faith and was complying with the existing law and could not have known that it had greater duties. *Id.* at 736–37.

In our case, the Board similarly acted without malice or bad faith; it simply failed to fully comply with the rules regarding notice to increase fees charged for licenses. So it could be appropriate to return the unclaimed funds to the Board, with a proviso that the Board must be ready to pay any late filed claims. We are not saying that the trial court must return the funds to the Board, we are simply saying that the trial court *may* consider that option when it holds a hearing on remand.

■ The fourth option is to apply the *cy pres* doctrine, which comes from a Norman French expression, *cy pres comme possible*, which means "as near as possible." *Airline Ticket Comm'n*, 307 F.3d at 682. When this doctrine is used to distribute unclaimed funds in the class action context, "the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Id.* The funds may be donated to charitable organizations that combat harms similar to those suffered by the class members. *Motorsports Merch.*, 160 F.Supp.2d at 1394. Using the funds for a purpose closely related to their origin is the best *cy pres* application, although the funds may go to other, unrelated charities if a closely related one cannot be found. *Id.*

■ In using the fourth option, the trial court appeared to realize that these rules exist, but abused its discretion in their application. Although this case was litigated in Cole County, all the parties in the case reside in and around Kansas City. Yet the trial court distributed all of the money to Cole County charities and to the Cole County treasury. And the parties to this case are all involved in some type of law enforcement, yet the trial court distributed the money to benefit children. While the charities that received this money are worthwhile, these distributions are in no way related "as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situat-

**862**

ed." *Airline Ticket Comm'n,* 307 F.3d at 682. The fact that this case was brought in Cole County did not place that great of a burden on the taxpayers in that county and did not justify distributing the money to Cole County. If the trial court decides on remand to apply the *cy pres* doctrine to these funds, then it must distribute the funds to charities that are more closely and obviously related to law enforcement activities. In making that distribution, one factor that the trial court must consider is the location of the parties to the lawsuit. *See Powell v. Georgia–Pacific Corp.,* 119 F.3d 703, 705 (8th Cir.1997) (holding that scholarships for students in the counties and parishes where the class members lived was an appropriate use of the unclaimed funds); *see also Airline Ticket Comm'n,* 307 F.3d at 683 (trial court must consider the geographic scope of the case).

The trial court abused its discretion when it distributed the unclaimed funds without providing the parties with notice and an opportunity for a hearing. Further, the trial court abused its discretion when it distributed the funds to charities unrelated to the activities of the parties in the suit and in Cole County, where none of the parties resided. On remand, the trial court must allow both parties an opportunity to be heard concerning the distribution of the unclaimed funds. The trial court may consider a reversion to the Board or may apply the *cy pres* doctrine to the funds, or some combination of the two. And if it chooses to apply the *cy pres* doctrine, the funds must be distributed to charities with interests as near as possible to the interests of the class members and those similarly situated. *Airline Ticket Comm'n,* 307 F.3d at 682. Because it is unlikely that the money can be recovered from the charities, the question may arise whether the funds could be recovered from the surety bond of the Fund Administrator. It may also be able to recover the

money paid to the Cole County treasurer, and, of course, the $25,000 held for any late-filed claims. But we leave it to the trial court to determine how to recover the money in order to correct its error. Therefore, this case is reversed and remanded for further proceedings consistent with the directions given in this opinion.

PAUL M. SPINDEN, P.J., and VICTOR C. HOWARD J. concur.