

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **LINDA GERKEN, ET AL.,** | ) | |
| | ) | |
| **Appellants,** | ) | **WD78221** |
| | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | **November 17, 2015** |
| **GARY SHERMAN, ET AL.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

### Appeal from the Circuit Court of Cole County, Missouri
The Honorable Patricia S. Joyce, Judge

Before Division Three:  Joseph M. Ellis, Presiding Judge, Gary D. Witt, Judge and
Anthony Rex Gabbert, Judge

Appellant Linda Gerken along with a class composed of pensioners of Missouri's Blind Pension Fund (collectively "Pensioners") appeal the judgment of the Circuit Court of Cole County giving some, but not all, relief requested against The Missouri Family Support Division and the Director of the Department of Social Services (collectively "Division").  The Pensioners contend the trial court erred in calculating the damages to be awarded, erred in calculating the attorneys' fees awarded, object to a number of rulings made by the court regarding the distribution of retroactive benefits, and contend the court erred in ruling that any surplus left after distribution should be directed back into the

Blind Pension Fund ("Fund").  The Pensioners raise eight points on appeal.  We reverse and remand for further proceedings.

## Factual and Procedural Background[1]

Pensioners brought suit in 2006 against the Division for declaratory relief and damages to recover unpaid benefits from the Fund.  They contend that, pursuant to subsection 209.040.4, which sets out the formula for calculating increases to the pensions, (1) monthly pensions to the blind should have been higher before fiscal year 1999 and (2) the Division incorrectly calculated increases after fiscal year 1999.  The parties have been before this Court on three previous occasions, and each time this Court has remanded for further proceedings.  *See* FN 1

The Missouri Constitution requires the General Assembly to levy an annual property tax for the Fund in order to pay pensions to "the deserving blind."  Mo. Const. Art. III §38(b).  In 1992, the Legislature set a minimum monthly pension amount of $340 and established a formula to determine the amount of annual increases.  §§ 209.040.1; 209.040.4.[2]  The Pensioners brought suit against the Division in 2006 alleging that the Fund had been miscalculating and underpaying Pensioners since 1994.  They sought an accounting and damages representing underpaid pensions retroactively to 1994.

The circuit court initially found for the Division denying Pensioners any recovery. In *Gerken I*, we affirmed the trial court in part, reversed in part, and remanded.  We

---

[1] This case has been on appeal before this court on three prior occasions. *Gerken v. Sherman*, 276 S.W.3d 844 (Mo. App. W.D. 2009) (*Gerken I*); *Gerken v. Sherman*, 351 S.W.3d 1 (Mo. App. W.D. 2011) (*Gerken II*); *Gerken v. Missouri Dept. of Social Services, Family Support Div.*, 415 S.W.3d 734 (Mo. App. W.D. 2013) (*Gerken III*).  These cases layout a substantial portion the procedural history of the case and will be borrowed from with no further citation.

[2] All statutory references are to RSMo 2000 cumulative as supplemented through 2013, unless otherwise noted.

determined that the Division's method of calculation was incorrect because, contrary to the relevant statutes and the Missouri constitution, the Division erroneously tied increases in pension payments to growth in the fund's balance (the balance method) rather than growth in the fund's revenue (the revenue method). The Division made the miscalculation in 1994 and that miscalculation had affected subsequent annual adjustments until 2005 when the calculation formula was changed by agreement between the Division and the Missouri Council of the Blind. We further found that the trial court had erred in finding that the three-year statute of limitations in section 516.130 applied to the Pensioners' claims. We remanded the case for further proceedings using the proper calculation method and for further proceedings consistent with the opinion.

On remand, the trial court appointed a special master, Dr. James LePage, to calculate the underpayment. The court also denied the Division's request to apply a five-year statute of limitations to the claims. Following a new judgment, the Division appealed.

In *Gerken II*, we concluded that the Pensioners' damages should have been limited by the five-year statute of limitations in section 516.120(2); subsection 209.040.4 requires the appropriation to be based on the growth of funds for the year preceding the year in which the appropriation is made and passed; on remand, prejudgment interest needed to be recalculated consistent with the trial court's new findings on damages; and attorney fees should be revisited on remand after the recalculation of damages. The court was also instructed to determine the distribution of any surplus that might exist after the claims are paid.

The trial court held a hearing, at which the parties filed a Stipulation of Facts and Statement of Contested Issues along with spreadsheet exhibits showing their proposed damage calculations. Thereafter, the trial court entered what it termed a "partial judgment" finding that the proper starting amount of damage calculations beginning February 1, 2001--five years before the 2006 action was filed--was $391 per-month. That amount was determined by basing the new payment rate on the pension *actually* paid after the last annual calculation on July 1, 2000. The order also determined total damages, prejudgment interest, and attorney fees, but the remedy for the damage calculation was not resolved. The circuit court certified the judgment as final for the purposes of appeal pursuant to Rule 74.01(b) and the Pensioners appealed.

In *Gerken III*, this Court found that it lacked jurisdiction to hear the appeal because, despite certification under Rule 74.01(b), there was no final judgment. Specifically, this Court ordered the circuit court to establish a process for class members to submit claims and outline the disposition of any future surplus in order to finalize the judgment.

On remand, the circuit court entered judgment establishing procedures for the distribution of retroactive benefits to Pensioners. The court also ordered that, in the event of a surplus, funds would be directed back into the Fund.

Pensioners again appeal the judgment of the circuit court raising eight points of error. Further facts are set forth below as necessary.

## Standard of Review

As to Pensioners' first seven points on appeal, there are no facts in dispute and therefore this Court reviews the claims *de novo* because there are no findings of fact to which to defer. *Board of Educ. of City of St. Louis v. Mo. State Bd. of Educ.*, 271 S.W.3d 1, 7 (Mo. banc 2008). Statutory interpretation is a legal question which we also review *de novo*. *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 686 (Mo. banc 2010). On the eighth point on appeal the judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares ore applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Analysis

## I.

The Pensioners' first four points on appeal are interrelated and shall be addressed together. These points all rest on the allegation that the circuit court erred in setting the starting rate of pension payments at $391 per month for the purpose of calculating Pensioners' damages. The Pensioners and the Division both presented spreadsheets to the circuit court detailing how each party believed the damages should be calculated. The differences in damages between each party's position stemmed from the application of the five-year statute of limitations.[3] The trial court found, as the Division argued, that the

---

[3] The application of a five-year statute of limitations was decided in *Gerken II* and is not at issue herein. On page 39 of Pensioners' Opening Brief they note that one of the class representatives, Sheila Holt, is developmentally disabled and as to her and others with such disabilities there can be no time bar to her claim. It does not appear that this issue was argued or raised in *Gerken II* which determined the applicable statute of limitations. *Gerken II* is now the law of the case. Pensioners present no argument that *Gerken II* was improperly

five-year statute of limitations acts as a bar not only to recovery of actual damages but also as a cut-off for calculating or determining damages. The Division's calculations resulted in an unpaid benefit amount of $76,197 (exclusive of interest), in contrast to the Pensioner's calculations of $11,478,681 in unpaid benefits.

The Pensioners argue that, although they can only recover damages back to 2001 due to the applicable statute of limitations, the Division should still be required to calculate all pension payments using the proper formula beginning in 1994 moving forward until 2005 when the calculation formula was amended by agreement of the parties. Because the proper amount of each year's payments are determined, in part, based on a statutory increase over the prior year's payment, the Pensioners' overall recovery would be substantially greater if the annual increases are applied from the earlier date. The 2001 payment would be based not on the pension payment actually made but on the pension payment that *should have been made* had the Division properly been applying the formula from the inception.

The circuit court appeared to find the holding in *Gerken II* controlling on this issue. In *Gerken II* we stated that "Pensioners damages are limited to those accruing from February 16, 2001." The Division argues that "[i]t therefore follows that the formula for calculation of damages must run from February 16, 2001." We do not read the holding in *Gerken II* so broadly. The holding put no limits on the calculation of damages but, rather, on its face applies only to the time period for which damages may be collectable. It is important to the understanding of this issue that the amount of damages

decided as to any class members or that we have any authority to revisit that holding as inapplicable to any individual member of the class.

that may be collectable and damage calculations are two separate and distinct determinations. All parties are in agreement that the statute of limitations blocks the recovery of damages—in this case retroactive monetary payments—prior to February 16, 2001. What is at issue, however, for this Court to address is whether the statute of limitations also acts as a bar to reviewing any wrongful act beyond the statutory period— in this case the calculation of proper annual pension payments. It appears to be an issue that has not previously been addressed in Missouri.

The parties agree as to the statutory formula which must be used to calculate benefits. The sole determination under the Points we are addressing is whether the Division should apply that formula retroactively beginning in 1994 or, because of the five-year statute of limitations, begin applying that formula in 2001.

In essence the question presented is this: Pursuant to the statute the amount to be paid annually to pensioners was originally a set figure in 1994 and that figure was to be increased each year based on a particular mathematical formula. In order for the proper annual payment to be determined for any particular year, the proper formula for annual increases must have been properly applied each and every year from the inception until the year in question. Once the proper amount is determined for each year in question, then the statute of limitations is applied to determine for which of those years damages may be collected. Or, as argued by the Division, does the statute of limitations require that the court may only look back to a particular date in history (5 years prior to filing) and start with the set amount on that date and only apply the formula for annual increases from that date forward?

7

"The general purpose of statutes of limitations is to prevent the assertion of stale claims." *Business Men's Assur. Co. of America v. Graham*, 984 S.W.2d 501, 507 (Mo. banc 1999). "It has often been pointed out that statutes of limitations rest upon reasons of sound public policy in that they tend to promote the peace and welfare of society, safeguard against fraud and oppression and compel the settlement of claims within a reasonable period after their origin and while the evidence remains fresh in the memory of the witness." *Id.* (*quoting Baron v. Kurn*, 164 S.W.2d 310, 317 (Mo. 1942)). "[A] statute of limitations is a legislative declaration of public policy not only to encourage our citizens to seasonably file and to vigilantly prosecute their claims for relief, but also to require them to do so or, otherwise, find their claims proscribed by law." *State ex rel. Collector of Revenue of City of St. Louis v. Robertson*, 417 S.W.2d 699, 701 (Mo. App. 1967).

The stated policy behind a statute of limitations is to encourage citizens to be vigilant in bringing claims as close in time to their origin as possible. The Pensioners' argument that the damage calculation is not cut off by the statute of limitations does not run afoul of this mandate.

The Pensioners rely on a string of federal cases determining the rights of federal judges to receive cost-of-living adjustments. *Beer v. U.S.*, 696 F.3d 1174 (Fed. Cir. 2012) (en banc); *Beer v. United States*, 111 Fed. Cl. 592 (2013); *Baird v. United States*, 114 Fed. Cl. 580 (2014). In these cases, the judges sought damages for Congress' acts in 1995, 1996, 1997, 1999, 2007, and 2010 withholding cost-of-living pay increases. The Court found that although they could only receive additional compensation going back to

8

January 13, 2003—the maximum period allowable under the applicable statute of limitations—the salary amounts should "incorporate the base salary increase which should have occurred in prior years had all the adjustments mandated . . . actually been made." *Beer*, 696 F.3d at 1187.

As the Division argues, the United States Constitution's diminishment clause is a distinguishing difference between the *Beer* case and this case. The Constitution prohibits the diminishment of federal judge's compensation while in office. If the court were not to look back past the statute of limitations and recalculate pay starting from the first failure to grant a cost-of-living increase, the result would be that judicial salaries would continue to be unconstitutional because they were diminished while judges were in office.

Although no constitutional right against diminished pension payments is at issue here, it does not make the reasoning in *Beer* any less persuasive. All parties agree that, under the holdings of *Gerken I, II,* and *III*, Section 209.040 was violated and Pensioners are entitled to recoupment of damages. If this Court were to adopt the Division's position that the statute of limitations applies to not only damages but also to damage calculations, the Petitioners would not be permitted full recovery for the period following 2001 and they are entitled to full recovery of their damages from that date forward. *Beer* illustrates that damage recovery and the calculation of those damages are separate issues and may be dealt with differently for the purposes of applying the statute of limitations.

The Division cites to the general rule that "a cause of action as to the calculation of the amount of a pension benefit accrues as to each periodic payment as it comes due." *Bettis v. Potosi R-III School Dist.*, 51 S.W.3d 183, 188 (Mo. App. W.D. 2001), *citing*

9

60A AM.JUR.2D *Pensions and Retirement Funds*, § 1736 (1988) (determining statute of limitations on retirement benefits does not begin to run until claimant has retired or is otherwise qualified). The Division argues that, as applied, the rule states that recalculation should occur as to all payments made during the statutory recovery period and only to those payments. We see no such limitation in the rule. In order to properly calculate the damages owed as of 2001, we must know what the proper payment for 2000 should have been. To not do so would not make the Pensioners whole for the time period for which they are entitled to fully recover their damages.

On remand the trial court shall determine the amount of annual payments which should have been made for each year from 1994 until 2005 when the formula for the calculation of annual payments was changed.[4] The court shall then determine the appropriate amount of damages that can be collected by using the annual amounts starting in 2001 forward, due to the statute of limitations on the amount of damages that may be collectable. Any amounts actually paid to the Pensioners from 2001 forward will then be deducted to determine the amount of actual damages. At oral argument, the attorney for the Division agreed that, should we find the statute of limitations not applicable to the calculation of damages, as we have done, the Pensioners Exhibit of Damages Calculations has properly calculated the damages. We direct the circuit court to

---

[4] Beginning with FY 2005, the Division agreed to use the Missouri Council of the Blind's proposed calculation. *Gerken I*, 276 S.W.3d at 852. There was no change to the statute itself but rather the formula for how the statute is applied was changed by agreement. No challenge has been raised as to how damages are calculated 2005 and forward but Pensioners are entitled to recovery for any underpayments from 2001 until present. At oral argument, attorney for Pensioners represented that, despite the 2005 formulation change agreed upon by the parties, there were still underpayments post-2005 that should be awarded to the Pensioners as damages.

use these calculations.[5] Applicable interest and attorney fees shall then be calculated based on the amount of actual damages.

Pensioners' Points II, III, and IV require no additional findings by this Court. Point II contends that the revenue formula is the proper calculation to apply to pension payments. This issue was decided in *Gerken I*. It appears that Pensioners raise it here as merely a restatement of Point I, arguing that the revenue formula must be applied to the payments for 1994-2000 not only to those payments post-2001. We discussed this argument above, and hold that the statutory revenue formula should be applied to calculate the appropriate amount of annual payments for each year going back to 1994.

Similarly, Point III contends that the circuit court erred in its failure to extend the revenue formula back to 1994 because failure to do so resulted in use of projected growth to determine the pension rate for Fiscal Year 2000 and thus improperly determined the base damages figure of $391. This, again, is merely the same argument which was fully addressed *supra*.

Finally, Point IV alleges that the circuit court erred to the extent that, in adopting the Division's calculation of damages, Defendant's Exhibit A, it did not require the Division to add the statutorily mandated increase to the previous year's pension amount when the previous year's pension amount was more than was statutorily required for that year. The formula established by *Gerken II* is clear, each year's pension increase is "determined by a simple formula: (1) dividing seventy-five percent of the annual growth

---

[5] These calculations were provided to the court in Plaintiff's Exhibit 1 to their Motion for New Trial, or In the Alternative, to Amend Judgment, November 26, 2012, and provided to this Court in Appendix at A-1. A copy was further provided to this Court at oral argument.

11

of funds by the number of pensioners to obtain the annual increase; then (2) dividing the annual increase by twelve to obtain the monthly increase." 351 S.W.3d at 7. It is unclear from Pensioners' briefing what ruling or calculation the circuit court actually made which they are challenging. We again affirm that the formula outlined in *Gerken II* is to be applied to recalculate all annual payment amounts beginning in 1994.

Pensioners' Point I—and to the extent recognized above, Points II, III, and IV—are granted and we remand the case for further proceedings consistent with this opinion.

## II.

The Pensioners' Point V alleges that the circuit court erred in limiting the claims process to only the balance available in the Fund. In the Claims Order issued by the circuit court following *Gerken III*, the circuit court states:

> The Department shall pay all claims from the 'common fund' within 60 days of the Court approving the Motion to Pay claims if Department has appropriated funds available for that purpose. If the Department does not have funds appropriated for that purpose then claims shall remain unpaid until such time as funds are appropriated and available for that purpose. Interest shall accrue on any unpaid claims to the extent required by law.

L.F. 18. The "common fund" was defined as "monies within the Blind Pension Fund, subject to appropriation, that are designated by the Department to pay the underpaid pension payments as set forth in this Judgment and Claims Process Order; or such other monies that have been appropriated for the payment of claims herein the manner provided by law."

The Pensioners argue that the language has the potential to allow the Fund to avoid its obligations if the Legislature fails to make appropriations necessary to pay all claims. They argue the State should not be permitted to avoid its financial obligations by

12

simply failing to make proper appropriations. In support, Pensioners cite to *Neske v. City of St. Louis*, 218 S.W.3d 417 (Mo. banc 2007), overruled on other grounds by *King-Willmann v. Webster Groves Sch. Dist.*, 361 S.W.3d 414 (Mo. banc 2012). In *Neske* the City of St. Louis attempted to make only partial payments to the city police and firemen's retirement systems and the systems sought declaratory and injunctive relief ordering full payments. The Supreme Court ordered full payments noting that "[t]he City cannot evade its responsibilities to the [retirement funds] by refusing to pay them the amounts required and then arguing that it has spent the monies elsewhere." *Id.* at 424. While we agree that an entity cannot evade a judgment by arguing that it otherwise spent its funds, there is no indication that such is the case here.

At this time, neither the State nor the Fund has attempted to make incomplete damage payments. Neither the State nor the Fund has indicated an intent to make incomplete damage payments. The circuit court's order does not allow for incomplete damages to be paid. Instead, the circuit court adequately provided for post-judgment interest in the event that the damages cannot be paid within 60 days of court approval of the Motion to Pay. The circuit court's language merely recognizes that the Fund may have insufficient funds to cover the damages and appropriation of additional funds would require legislative action. Because legislative action may take more than the 60 days given for payment, post-judgment interest is provided. The Fund obtains additional revenues each year from property taxes.[6] We are prohibited from giving advisory

---

[6] The Pensioners appear to base, in part, their argument on the fact that at some point in the past the Fund had a large balance that was allowed to accumulate rather than increase pensions. The fact that the Fund at one point had a large balance has little to do with its ability to pay any damages upon this case reaching finality.

13

opinions and to opine on this issue at this time would be an advisory opinion.  *Henry v. Farmers Ins. Co.*, 444 S.W.3d 471, 477 (Mo. App. W.D. 2014).  If, and only if, the Fund fails to pay its obligations would the Pensioners have a ripe issue for the court to decide.

The circuit court merely recognized the realities of the situation—the damages may amount to more monies than the Fund currently has available.  The court made provisions for post judgment interest until the judgment is ultimately paid.  It did not err in doing so.

### III.

The Pensioners' Point VI alleges that the trial court erred in entering Judgment for $38,083.38 in attorneys' fees given its argument as to the retroactive application of the damage calculation prior to the statute of limitations period.  It cannot be said that the circuit court's judgment was in error because it properly applied the 25% attorney fee award to the damages as calculated at the time.  However, given our findings above, the Division agrees that, on remand, the circuit court should recalculate the judgment for attorneys' fees based on the proper calculation of damages.

### IV.

Pensioners raise a number of claims of error in their seventh point on appeal. They appear in six subparagraphs and are the objections or points of discord between the parties raised by the Pensioners to the circuit court prior to the court's approval of the Claims Process Order.  Prior to the court's entry of judgment, the parties agreed to the terms of the disbursement except for these six objections raised by the Pensioners.  The first three are premised on the argument that, because the circuit court erred in not

14

properly calculating damages retroactively to 1994, the damage numbers used in the Claims Process Order and elsewhere in the judgment are incorrect. We agree, as does the Division, that although not error at the time of its judgment, given this Court's ruling above, the circuit court needs to recalculate the Claims Process Order to conform to this opinion. Subparagraphs A, B, and C of Point VII are granted.

Subparagraph D objects to all statements made in the judgment that the payment of benefits is limited to the monies in the Fund. This issue was fully addressed *supra*.

Subparagraph E states that, if the Fund does not have sufficient resources to pay retroactive benefits, the Legislature should be directed to appropriate additional funds or the Pensioners should have the right to execute on the judgment against the Treasurer. As the Division notes in its response to the circuit court, Pensioners did not request that the circuit court take an action to compel the Legislature or otherwise order the judgment to be executed against the Treasurer. It does not appear that the judgment by the circuit court addressed these issues. Without a ruling on an issue by the circuit court, the issue is not ripe and there is nothing to review on appeal. Appellate court review is limited to issues first raised before the trial court. *Brown v. Wallace*, 52 S.W.3d 21 (Mo. App. W.D. 2001). Once again, for us to address this issue would require us to give an advisory opinion, which we are prohibited from doing and refuse to do at this time.

Subparagraph F objects to all unclaimed monies in the common fund going to the Blind Pension Fund, and maintain that at least half of the unclaimed monies go to the Missouri Council of the Blind. As this is Pensioners final point on appeal raised in Point Relied On VIII, we will not address this argument here.

15

To the extent that Point VII raises issues as to the calculation of damages to be used throughout the judgment, we grant Pensioners' arguments in accordance with the discussion above. We, however, deny the points raised in subparagraphs D and E. Subparagraph F is discussed *infra*.

## V.

Pensioners' final point on appeal, Point VIII, alleges that the circuit court erred in determining that any surplus remaining after distribution would be placed back in the Blind Pension Fund.

A Decision regarding the distribution of unclaimed funds in a class action is reviewed for abuse of discretion. *Kansas Ass'n of Private Investigators v. Mulvihill*, 159 S.W.3d 857 (Mo. App. W.D. 2005). "We will find an abuse of discretion if the trial court's decision is against the logic of the circumstances before the court at the time and is so arbitrary and unreasonable that it shocks the conscience of this court and suggests a lack of careful consideration." *Id.* at 859.

"When courts are faced with distributing unclaimed funds from a class action, they have four options: a pro rata distribution to the class members who have already made claims; escheat to the government; reversion to the defendant; or a *cy pres* distribution." *Id.* at 860-61. Undisbursed funds are "property interests within the meaning of the Due Process Clause and parties with an interest in those funds are entitled to procedural due process and an opportunity to be heard." *Id.* at 860.

In *Mulvihill*, the trial court used the *cy pres* doctrine to order unclaimed funds to be dispersed to various charities and to the Cole County Treasurer for expenses. It did so,

16

however, without notice or hearing giving the parties no opportunity to present argument on the distribution. On appeal, this Court found that such a distribution without hearing was an abuse of the trial court's discretion.

In the case at bar, however, the parties were heard on the issue. Both sides had the opportunity to present evidence and make argument to the circuit court. The Pensioners desire to have surplus directed to the Missouri Council of the Blind rather than back into the Fund. The Fund will continue to provide pensions to the Pensioners in the future. Pensioners raised concerns that there is no legal separation between the Fund and the defendants in this case. They failed to make proper pension payments in the past and could fail to do so again.

We find that it was not an abuse of discretion for the circuit court to direct any surplus back to the Fund. This case and any prior deficiencies were due to the Division determining pensions based on an erroneous calculation formula. There is no indication that it was maliciously or fraudulently done. In fact, the circuit court expressly found:

> [S]ince February 16, 2001, the Defendant Department of Social Services and its officials administered the blind pension fund in good faith in a fair, prudent, conservative manner consistent with its obligations under law and the best interests of the pensioners served by the fund. To the extent that the Courts have ultimately found that some of the administrative decisions that DSS officials made were contrary to law, the Court finds that these decisions were reasonably made in good faith based on a reasonable, good faith belief that the decisions were made according to law and in the best interests of the pensioners.

The Fund will continue to be the source of pensions for Pensioners in the future and it is not illogical, arbitrary, or unreasonable that the circuit court would direct the surplus back

17

into the Fund, which will continue to be a source of aid for the current Pensioners and those who may qualify to receive benefits in the future.

Pensioners' Point VIII is denied.

## Conclusion

On remand the trial court shall determine the amount of annual payments which should have been made for each year from 1994 until 2005, when the statutory formula for the calculation of annual payments was changed, and also determine the proper amount of annual payments from 2005 to current under the new formula. The court shall then determine the appropriate amount of damages that can be collected by using the annual amounts starting in 2001 forward, due to the statute of limitations on the amount of damages that may be collectable. Any amounts actually paid to the Pensioners from 2001 forward will then be deducted to determine the amount of actual damages. Applicable interest and attorney fees shall then be calculated based on the amount of actual damages. We remand this case to the circuit court so it can reissue a judgment in accord with this opinion and oversee the processing of individual Pensioner's claims, payments to class members, and distribution of surplus funds, should any such funds exist.

_____
Gary D. Witt, Judge

All concur